Case No. 25-1429

_____

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

_____

Kyick Holdings, LLC, Transferee,
Petitioner-Appellant,

v.

William Hollis Long, II, Commissioner of
Internal Revenue Service,
Respondent-Appellee.

_____

# APPEAL FROM THE UNITED STATES TAX COURT

_____

# BRIEF OF PETITIONER-APPELLANT

_____

John W. Geismar, Esq., Bar No. 25954
Daniel L. Cummings, Esq., Bar No. 25614
William F. Campbell, Esq., Bar No. 1213361
Lucy P. Weaver, Esq., Bar No. 1218498

Norman, Hanson & DeTroy, LLC
220 Middle Street
P.O. Box 4600
Portland, ME 04112-4600
(207) 774-7000

July 7, 2025

## CORPORATE DISCLOSURE STATEMENT

This appeal does not involve any of the entities or case types contemplated by Fed. R. App. P. 26.1(a)–(c).

## TABLE OF CONTENTS

**Page**

**TABLE OF AUTHORITIES**...................................................................... ii

**STATEMENT REGARDING ORAL ARGUMENT** ................................ vi

**JURISDICTIONAL STATEMENT**............................................................. 1

**STATEMENT OF THE ISSUES** ................................................................. 1

**STATEMENT OF THE CASE**..................................................................... 2

**SUMMARY OF THE ARGUMENT** ........................................................... 4

**ARGUMENT** ................................................................................................ 7

I.    STANDARD OF REVIEW .......................................................................... 7

II.   THE TAX COURT ERRED IN CONCLUDING THAT THE IRS EXERCISED "REASONABLE DILIGENCE" IN SENDING THE NOTICE OF TRANSFEREE LIABILITY TO KYICK HOLDINGS, LLC'S PROPER MAILING ADDRESS........................................................... 7

III.  EVEN IF THE IRS PROPERLY MAILED THE NOTICE TO KYICK HOLDINGS, LLC'S LAST KNOWN ADDRESS, THE TAX COURT ERRED IN DISMISSING THE CASE FOR LACK OF JURISDICTION BECAUSE THE NINETY-DAY TIME LIMITATION IN 26 U.S.C. § 6213(a) IS NONJURISDICTIONAL AND MAY BE EQUITABLY TOLLED ...................................................................... 13

   A. The Tax Court erred in concluding that it lacked jurisdiction...................................................................... 15

      1. Supreme Court case law supports a nonjurisdictional interpretation of Section 6213(a)'s time limitation ............................ 15

      2. The First Circuit should join the circuit that has adopted nonjurisdictional interpretation of Section 6213(a)'s time limitation.......................................................................... 19

i

**B. Because Section 6213(a)'s deadline is nonjurisdictional, it is subject to equitable tolling** ................................................................ 20

1. The text of Section 6213(a) does not preclude equitable tolling ................................................................................................ 20

2. The purpose of Section 6213(a) supports equitable tolling ............ 22

3. The facts of this case demonstrate the right to equitable tolling ................................................................................................ 24

**CONCLUSION** ........................................................................................... 24

**CERTIFICATE OF COMPLIANCE**

**CERTIFICATE OF SERVICE**

# TABLE OF AUTHORITIES

**Page**

## STATUTES

26 U.S.C. § 6213(a) ..................................................................13, 14, 21

26 U.S.C. § 6330(d)(1)..................................................................17

26 U.S.C. § 6511(a)..................................................................22

26 U.S.C. § 6511(b)(1)..................................................................22

26 U.S.C. § 6511(b)(2)(A) ..................................................................22

26 U.S.C. § 6511(b)(2)(B) ..................................................................22

26 U.S.C. § 6901(g) ..................................................................7

26 U.S.C. § 7482(a) ..................................................................7

## REGULATIONS

26 C.F.R § 301.6212-2(a)..................................................................8

26 C.F.R § 301.6212-2(b)(2)..................................................................8

## CASES

*Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)..................................................................23

*Boechler, P.C. v. Comm'r*, 596 U.S. 199 (2022) ............. 6, 14, 15, 16, 17, 18, 19, 20

*Cavallaro v. Comm'r*, 842 F.3d 16 (1st Cir. 2021) ..................................................................7

*Culp v. Comm'r*, 75 F.4th 196 (3d Cir. 2023) ..................................................6, 14, 15, 19, 20

*Gregory v. Comm'r*, 839 F. App'x 745 (3rd Cir. 2020) ..................................................................8

*Gyorgy v. Comm'r*, 779 F.3d 466 (7th Cir. 2015) ....................................................8

*Hedges v. United States*, 404 F.3d 744 (3rd Cir. 2005)............................................22

*Henderson v. Shinseki*, 562 U.S. 428 (2011) ...................................................16, 18

*Holland v. Florida*, 560 U.S. 631 (2010)..................................................................22

*Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990) ............................................20

*Kellog v. Comm'r*, 88 T.C. 167 (1987).....................................................................14

*Kontrick v. Ryan*, 540 U.S. 443 (2004) ....................................................................16

*Lozano v. Montoya Alvarez*, 572 U.S. 1 (2014) .......................................................20

*Mulder v. Comm'r*, 855 F.2d 208 (5th Cir. 1988) ......................................................8

*Organic Cannabis Found., LLC v. Comm'r*, 962 F.3d 1082 (9th Cir. 2020)...........15

*Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145 (2013) .................................18, 23

*State Police Ass'n of Mass. v. Comm'r*, 125 F.3d 1 (1st Cir. 1997)..........................7

*Terrell v. Comm'r*, 625 F.3d 254 (5th Cir. 2010) ......................................................8

*United States v. Brockamp*, 519 U.S. 347 (1997) .......................................20, 21, 22

*United States v. Kwai Fun Wong*, 575 U.S. 402 (2015)...........................................16

*Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982).......................................23

## OTHER

Internal Revenue Manual § 4.11.52.5.2 .....................................................................11

National Taxpayer Advocate, *Annual Report to Congress 2018* (2018),
ARC18_Volume1_MostSeriousProblems.pdf .........................................................23

National Taxpayer Advocate, *2025 Purple Book* (Dec. 31, 2024),
ARC24_PurpleBook_07_StrengthTPR_45.pdf......................................................23

Rev. Proc. 2010-16, 2010-19 I.R.B. 664....................................................................8

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument may assist the Court in resolving legal issues that affect the rights of thousands of taxpayers. The principal issue involves an issue of first impression in this Circuit regarding whether the IRS exercised "reasonable diligence" with respect to identifying Appellant's proper mailing address.

Also presented is a question of whether the ninety-day (or 150-day) time limit to petition a notice of deficiency with the Tax Court under 26 U.S.C. § 6213(a) operates as a jurisdictional deadline or a basic, nonjurisdictional deadline to which equitable principles apply.

## JURISDICTIONAL STATEMENT

Appellant invoked the United States Tax Court's jurisdiction in this matter by filing a Petition under 26 U.S.C. § 6213(a) to review a Notice of Transferee Liability. (A. 6–8.) The Tax Court issued an Order of Dismissal for Lack of Jurisdiction on January 31, 2025. Pursuant to 26 U.S.C. § 7483, Appellant filed a notice of appeal on April 25, 2025, within ninety days of the Tax Court's Order, thereby giving this Court jurisdiction under 26 U.S.C. § 7482(a)(1). (A. 84–85.) Venue is proper in this Court under 26 U.S.C. § 7482(b)(1) as all Appellant's members resided in Maine at the time it filed its Petition.

## STATEMENT OF THE ISSUES

1. Whether the Tax Court erred in finding that the Petitioner-Appellant presented no evidence to show that the Internal Revenue Service failed to exercise "reasonable diligence" with respect to identifying Kyick Holdings, LLC's mailing address, when it mailed a notice of transferee liability to an incorrect mailing address, thereby precluding Kyick Holdings, LLC, from petitioning the notice within the ninety-day window, even though the Internal Revenue Service, after an extensive investigation, had mailed the same notice on the same date to another entity, owned by the same parties and involved in the same alleged fraudulent transaction, to the correct mailing address.

2. Whether the Tax Court erred in concluding that it lacked jurisdiction over Kyick Holdings, LLC's petition because it was filed after the ninety-day filing window prescribed by 26 U.S.C. § 6213(a).

1

## STATEMENT OF THE CASE

This case involves the efficacy of the notice of transferee liability mailed to Petitioner-Appellant, Kyick Holdings, LLC ("Holdings"), a Maine limited liability company, after an alleged fraudulent transfer of real property in 2018 from various entities owned by Dwight Raymond to both Holdings and Kyick Charters, LLC ("Charters"), another Maine limited liability company. Holdings and Charters are owned by siblings Kylie and Nicholas Raymond. Both companies operate out of the same location in Kennebunk, Maine, and share the same mailing address.

The Internal Revenue Service ("IRS") mailed notices of transferee liability to Charters (the "Charters Notice") and to Holdings (the "Holdings Notice") on or about August 30, 2022, informing them that the IRS was assessing both Charters and Holdings as Transferees for unpaid income tax due from Dwight Raymond for tax years 2012–2019. (*See* A. 30–33; 75–77.) The Notices also informed both companies that they had ninety days to petition the liability with the U.S. Tax Court, i.e., until November 28, 2022. (A. 32, 76.)

Charters filed a petition within ninety days, as instructed in its notice.[1] Holdings did not. The reason for this is because while the Charters Notice arrived at the correct mailing address, P.O. Box 2664, in Kennebunkport, the Holdings

---

[1] Charters is awaiting a decision in the Tax Court on the merits of its case concerning its putative liability, Docket No. 25548-22.

Notice was delivered instead to 4 Western Avenue, a mailbox nailed to the side of an unoccupied building in the neighboring Town of Kennebunk. (A. 93–94.) There the Holdings Notice languished, until it was returned to the IRS with a note reading "UNCLAIMED, UNABLE TO FORWARD, RETURN TO SENDER." (A. 73.) Inexplicably, an agent with the IRS later informed counsel for Charters that Holdings had never picked up its notice. By then it was January 5, 2023. Holdings ultimately filed its petition with the Tax Court on January 20, 2023, 143 days after the notice was mailed, fifty-three days after the period to file a petition with the Tax Court had ostensibly ended—but only fifteen days after Holdings had become aware of the Notice.

On September 6, 2023, the IRS moved to dismiss Holdings' petition on the grounds that it had been filed after the ninety-day filing window. (A. 11–15.) The IRS also noted that the tracking information for the Holdings Notice, included in its Motion, did not state that the Holdings Notice had been "delivered." (A. 12.) According to the IRS, this issue should be of no concern to the Tax Court in making its decision because the notice was mailed to Holdings' "last known address," which the Treasury Regulations define as the address listed on the taxpayer's last properly filed and processed tax return, absent notification otherwise. (A. 12–13.)

Holdings filed an Objection to Motion to Dismiss for Lack of Jurisdiction on

September 28, 2023. In its filing, Holdings argued that the Tax Court did have

jurisdiction to review the petition, and that the Holdings Notice was invalid

because the IRS did not exercise "reasonable diligence" in identifying Holdings'

proper address. (Pet'r's Obj. to Mot. to Dismiss, at 2 n.1, 7–13.) The parties

continued to exchange filings on these issues through late November 2023.

 The parties stipulated to twelve exhibits, which were admitted during a

remote hearing held on October 7, 2024. (A. 16–17, 86–87.) A thirteenth exhibit

was offered by the IRS and admitted during the remote trial.[2] (A. 91–92.)

The Tax Court docketed its Order of Dismissal for Lack of Jurisdiction on

January 31, 2025, finding that it lacked jurisdiction because Holdings filed its

petition after the ninety-day deadline and that the court could not conclude "that

the actions by the IRS in this case . . . lack[ed] 'reasonable diligence.'" (Order at 7,

Add. 7.) Holdings timely appealed.

## SUMMARY OF THE ARGUMENT

This case centers on the interplay between a statute requiring the IRS to send

notices to a taxpayer's "last known address," defined in the Treasury Regulations

("Regulations") as the address listed on the taxpayer's last properly filed and

processed tax return, and case law requiring the IRS to exercise "reasonable

---

[2] After the trial, the parties renumbered the exhibits at the request of the Tax Court. (*See* A. 16.)

4

diligence" when it knew or should have known that the taxpayer's mailing address, as so defined, is incorrect.

The IRS argues that simply sending notices to the last known address as defined in the Regulations suffices, and that it is incumbent on the taxpayer to provide "clear and concise notification" of any address change. According to the IRS, Holdings failed to do so.

The Tax Court adopted the IRS's approach. In doing this, however, it conflated the two concepts identified above: namely, statutory and regulatory compliance versus reasonable diligence given a particular set of facts and circumstances. In Part III of its opinion, the Tax Court cited to the applicable regulation concerning the definition of "last known address." It correctly noted that the address used by the IRS to send the Holdings Notice met the statutory and regulatory requirements because the address appeared on the last return filed by Holdings, and that Holdings did not otherwise provide a "clear and concise notification" to the IRS of a different address.

Holdings does not dispute these findings. Holdings does dispute, however, the Tax Court's failure to apply the "reasonable diligence" test at all, which calls for an evaluation of the evidence of what the IRS knew or should have known at the time the notice was mailed. Rather, the Tax Court's Order focuses again on the fact that Holdings "has offered no evidence that it had given 'clear and concise

5

notification' of any address other than that used by the IRS." The court also noted the evidence that the Holdings Notice was returned as "unclaimed" and not "undeliverable." It then concluded by saying that the last known address of Holdings was the same as had appeared on its last filed return.

The Tax Court's ruling is erroneous both factually and legally. Its conclusion that Holdings provided "no evidence supporting [its] conclusion" is demonstrably erroneous. That evidence was presented to the court, which apparently gave it no credence and rather focused on but one element of proof, the Holdings Notice being returned as "UNCLAIMED." In so doing, it ignored a plethora of other evidence that, when combined, established that the IRS knew or should have known at the time of mailing what Holdings' correct mailing address was. In sum, the Tax Court failed to appropriately assay the "reasonable diligence" requirement.

Furthermore, even if the IRS did exercise reasonable diligence in connection with the mailing address, the Tax Court erred in dismissing Holdings' case for lack of jurisdiction because the ninety-day time limitation in the notice operates as a nonjurisdictional deadline to which equitable tolling principles apply. This is supported by the United States Supreme Court's holding in *Boechler, P.C. v. Commissioner*, and the Third Circuit Court of Appeals' holding in *Culp v. Commissioner*. *See Boechler, P.C. v. Comm'r*, 596 U.S. 199, 211 (2022); *Culp v. Comm'r*, 75 F.4th 196, 202 (3d Cir. 2023).

# ARGUMENT

I.    STANDARD OF REVIEW.

Courts of appeals reviewing decisions of the U.S. Tax Court use the same standards of review "traditionally . . . used in appellate review of district court decisions in civil actions tried without a jury." *State Police Ass'n of Mass. v. Comm'r*, 125 F.3d 1, 5 (1st Cir. 1997); *see also* 26 U.S.C. § 7482(a). The Tax Court's legal conclusions are therefore reviewed de novo, and its factual findings are reviewed for clear error. *Cavallaro v. Comm'r*, 842 F.3d 16, 20 (1st Cir. 2021). "Notwithstanding the clearly erroneous rule, however, the Tax Court's ultimate conclusions . . . are conclusions of law, and are therefore subject to de novo review." *State Police Ass'n of Mass.*, 125 F.3d at 5. Thus, this Court shall review with fresh eyes both the conclusion that the Holdings presented no evidence showing that the IRS failed to exercise "reasonable diligence" in identifying Holdings' proper mailing address and the decision that the Tax Court lacked jurisdiction due to Holdings' petition being filed after the ninety-day deadline.

II.    THE TAX COURT ERRED IN CONCLUDING THAT THE INTERNAL REVENUE SERVICE EXERCISED "REASONABLE DILIGENCE" IN IDENTIFYING KYICK HOLDINGS, LLC'S PROPER MAILING ADDRESS.

Pursuant to Section 6901 of the Code, a notice of transferee liability is sufficient and enforceable as long as it is mailed to the taxpayer's "last known address." 26 U.S.C. § 6901(g). Generally, a taxpayer's last known address is "the

address that appears on the taxpayer's most recently filed and properly processed Federal tax return," unless the taxpayer gives the IRS "clear and concise" notification of a different address. 26 C.F.R § 301.6212-2(a); *see also* Rev. Proc. 2010-16, 2010-19 I.R.B. 664. Alternatively, the IRS will also change a taxpayer's address to reflect change-of-address updates received from the taxpayer through the United States Postal Service. 26 C.F.R. § 301.6212-2(b)(2).

Regardless of this rule, the IRS must still use "'reasonable diligence' to determine the taxpayer's address in light of all relevant circumstances." *See, e.g.*, *Terrell v. Comm'r*, 625 F.3d 254, 260 (5th Cir. 2010); *Gregory v. Comm'r*, 839 F. App'x 745, 747 (3rd Cir. 2020). "The proper inquiry for reasonable diligence examines the facts the IRS knew or should have known at the time it sent the Notice." *Terrell*, 625 F.3d at 260; *see also Gregory*, 839 F. App'x at 748; *Gyorgy v. Comm'r*, 779 F.3d 466, 478–79 (7th Cir. 2015); *Mulder v. Comm'r*, 855 F.2d 208, 211 (5th Cir. 1988).

When the IRS mailed the Holdings Notice, it had actual knowledge that the 4 Western Avenue address was not Holdings' current mailing address. (Pet'r's Obj. to Mot. to Dismiss, at 7–8.) But even more importantly, the IRS had actual knowledge of the correct mailing address. The IRS sent Holdings and Charters notices of transferee liability only after an extensive investigation into the allegedly fraudulent transfer, during which time the investigating officer received documents

listing P.O. Box 2664 as Holdings' mailing address— the very same documents he submitted to secure a transferee liability lien against Holdings. (*See* Pet'r's Obj. to Mot. to Dismiss, at 7–8, A. 48–55.)

Despite this knowledge, the IRS blindly adhered to its "last known address" mantra, and sent the Holdings Notice to the 4 Western Avenue address and the Charters Notice to the P.O. Box 2664 address.

Furthermore, the evidence before the Tax Court included a letter from Holdings' counsel Attorney John Geismar to Christopher Morse of the IRS dated January 9, 2023, memorializing a telephone discussion the two had on January 5, wherein Mr. Morse informed Mr. Geismar that the IRS had sent Holdings a notice and that the notice had never been "picked up." (A. 39–40.) However, though Mr. Morse called Mr. Geismar in January, tracking evidence for the Holdings Notice shows it was returned to the IRS as early as October 7, 2022, when less than half of the ninety-day period to respond to the Notice had elapsed. (A. 39, 73.) Nevertheless, the IRS took no action on that information until the January 5, 2023, phone call. (A. 39–40.)

Mr. Morse had ostensibly contacted Mr. Geismar to inform him that the Holdings Notice had never been "picked up" by anyone from the company. This leaves an obvious question: Why did Mr. Morse call the counsel on record for Charters—an entity that the IRS has insisted over and over is separate from

9

Holdings and whose parallel proceedings are irrelevant to Holdings'—and inform him that the Holdings Notice had not been received? At that time, Mr. Geismar was not on record as a representative of Holdings, yet Mr. Morse nonetheless chose to call him. Again, why? The answer is, of course, clear—he and the IRS understood the close connection between Charters and Holdings (including the same owners, the similarity in the names, and the fact that the liability arose from a single transaction in which both entities were involved) and correctly surmised that Mr. Geismar likely represented Holdings as well.

Mr. Morse's good detective work on this score begs another question: Why did the IRS fail to realize that a notice that was delivered to and promptly petitioned by Charters mean that address for the other notice, which was returned to the IRS as "UNCLAIMED," was likely incorrect?

Similarly, why did the IRS fail to question why only one of the two related entities, assessed at the same time for the same transaction and liability, filed a petition while the other did not?

It is true that Charters and Holdings are two separate legal entities; viewed in a vacuum as the IRS does, this provides "cover" as to why the IRS took no action after receiving notice of the return of the Holdings notice after successfully providing notice to Charters. However, the facts of this case demonstrate that the two entities were intertwined—both have identical ownership, and both were

assessed by the IRS in connection with the very same transaction.

Revenue Officer Eric Gaines pursued an investigation of transferee liability with respect to taxpayer Dwight Raymond against both Holdings and Charters. Without explanation, he completed IRS Form 3031, ("Investigative Report"), naming both Holdings and Charters as transferees. (A. 43.) This disregards an explicit IRS instruction to investigators that "[e]ach transferee is a separate entity. As such, each transferee must have a separate case file established." I.R.M. § 4.11.52.5.2. The agency's "separate taxpayers" defense begins to deflate when it becomes clear just how rarely the IRS treated these two entities as separate during its investigation.

The Investigative Report listed "Name of Transferee" as "Kyick Holdings LLC & Kyick Charters LLC" and identified the addresses of both alleged transferees as 4 Western Avenue, Kennebunk, Maine, and 78 Market Street, Portsmouth, New Hampshire. (A. 43.) The Investigative Report also included a copy of an Asset Purchase Agreement, which specified a notice address for that contract of P.O. Box 2663[*sic*], Kennebunkport, Maine. (A. 52–54.)

Revenue Officer Gaines also attached the Town of Kennebunk real estate tax cards for Holdings' properties located at 2 Harbor Lane and 4 Harbor Lane. (A. 55–60.) Both tax cards indicated Holdings was the owner of record and listed Holdings' address as P. O. Box 2664, Kennebunkport, Maine.

11

This evidence, along with other evidence in the record, clearly demonstrates a deep and thorough investigation by Revenue Officer Gaines in support of his determination that Holdings was a "transferee." Through access to public records and use of a subpoena, Revenue Officer Gaines obtained evidence that Holdings' correct mailing address was P.O. Box 2664, Kennebunkport, Maine. (*See* A. 61–66.) This information demonstrates that the IRS was keenly aware both before and after mailing the Holdings Notice that the 4 Western Avenue address was incorrect. And more importantly, it establishes that the IRS knew or should have known that Holdings' correct address was P.O. Box 2664.

Simply put, the IRS knew or should have known, based on ample evidence before it, that 4 Western Avenue was not Holdings' proper address. It also knew that Holdings' address was the same as Charters' address. The IRS defends by making much of the notion that Holdings and Charters are two separate legal entities and that it was under no obligation to "tie them together" and connect the successful mailing of the Charters Notice with the unsuccessful delivery of the Holdings Notice. As a general statement, that is true. However, the facts of this case quickly reveal the IRS's Janus-faced stance on this issue. It is beyond peradventure that the IRS had already tied Holdings and Charters together in every single aspect of assessing transferee liability against each. For the IRS to pretend that Holdings is trying to hold it to some arduous administrative standard, given

the facts of this case, is disingenuous. And the "last known address" regulation should not shield the agency from its duty to exercise reasonable diligence.

The evidence demonstrated that the IRS failed to exercise reasonable diligence given the facts and information that it had obtained in its investigation. Accordingly, Kyick Holdings, LLC, requests that this Court reverse the decision of the Tax Court and hold that the Holdings Notice was without effect.

III.  EVEN IF THE IRS PROPERLY MAILED THE NOTICE TO KYICK HOLDINGS, LLC'S LAST KNOWN ADDRESS, THE TAX COURT ERRED IN DISMISSING THE CASE FOR LACK OF JURISDICTION BECAUSE THE NINETY-DAY TIME LIMITATION IN 26 U.S.C. § 6213(a) IS NONJURISDICTIONAL AND MAY BE EQUITABLY TOLLED.

The Internal Revenue Code ("IRC" or the "Code") instructs the following:

> Within 90 days . . . after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. . . . [N]o assessment of a deficiency . . . and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day or 150-day period, as the case may be, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. . . . The Tax Court shall have no jurisdiction to enjoin any action or proceeding or order any refund under this subsection unless a timely petition for a redetermination of the deficiency has been filed and then only in respect of the deficiency that is the subject of such petition.

26 U.S.C. § 6213(a). Cases of transferee liability are procedurally similar to deficiency cases and thus are treated the same for purposes of determining when

and how a taxpayer can petition their notice of transferee liability, which is authorized by section 9601. *See Kellog v. Comm'r*, 88 T.C. 167, 175 (1987) ("Although section 6213(a), pertaining to filing petitions with this Court, is couched in terms of notice of deficiency, section 6901(a) (as well as the regulations issued thereunder) indicates that it applies to a notice of transferee liability as well."). Therefore, a taxpayer who receives a notice of transferee liability has ninety days[3] to petition the Tax Court for a redetermination of this liability, just as they would a notice of deficiency. *See id.* Assuming that the Holdings Notice was properly served, then Holdings' Petition was filed after the ninety-day time limitation.

Failing to file a petition by this deadline, however, does not necessarily wrench jurisdiction from the Tax Court. *See Culp v. Comm'r*, 75 F.4th 196, 202 (3d Cir. 2023) ("This is the first published opinion to address squarely whether § 6213(a)'s deadline for redetermination petitions is jurisdictional, and we hold it is not."). Simply put, not all deadlines are jurisdictional, and while best avoided, failing to meet a deadline does not always sound a death knell for the taxpayer. *See Boechler, P.C. v. Comm'r*, 596 U.S. 199, 211 (2022) (holding that a thirty-day filing limitation in Section 6330(d)(1) of the Code is nonjurisdictional and subject

---

[3] Taxpayers located outside of the United States have 150 days to file a petition. 26 U.S.C. § 6213(a). The deadline may also be extended if it falls on a weekend or a holiday. *See id.*

to equitable tolling).

The United States Courts of Appeals' interpretations of Section 6213(a) have resulted in two entirely at-odds readings, with one court finding that the deadline is nonjurisdictional, *see Culp*, 75 F.4th at 202, and others finding that it is. *See, e.g.*, *Organic Cannabis Found., LLC v. Comm'r*, 962 F.3d 1082, 1094 (9th Cir. 2020).

Holdings contends that the conclusion in *Culp* is the better reasoned view in light of the principles espoused in *Boechler*, and thus requests that the First Circuit find that the Tax Court improperly concluded that it lacked jurisdiction in this case and hold that  the deadline in Section 6213(a) is nonjursidictional and subject to equitable tolling.

## A. The Tax Court erred in concluding that it lacked jurisdiction.

The U.S. Tax Court erred when it dismissed this case for lack of jurisdiction and based its decision in part on Holdings' failure to file its petition within the time limit prescribed by Section 6213(a) for the following two reasons. First, recent Supreme Court case law on the principles of jurisdictional deadlines and equitable tolling supports the reading that Section 6213(a)'s deadline is nonjurisdictional. *See Boechler*, 569 U.S. at 211. Second, the only Circuit ruling on the issue after *Boechler* held that it was nonjurisdictional. *See Culp*, 75 F.4th at 202.

1. <u>Supreme Court case law supports a nonjurisdictional interpretation of Section 6213(a)'s time limitation.</u>

While "[j]urisdictional requirements mark the bounds of a 'court's

adjudicatory authority' . . . . [N]ot all procedural requirements fit that bill."

*Boechler*, 596 U.S. at 203 (quoting *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)). In

fact, "[m]any simply instruct 'parties [to] take certain procedural steps at certain

specified times' without conditioning a court's authority to hear the case on

compliance with those steps." *Id.* (quoting *Henderson v. Shinseki*, 562 U.S. 428,

435 (2011) (alteration in original)).

      Rather than just assume that all procedural requirements are jurisdictional,

the Supreme Court requires that Congress "clearly state[]" when it intends for a

procedural rule to be so. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515–16

(2006). At the very least, "traditional tools of statutory construction must plainly

show that Congress imbued a procedural bar with jurisdictional consequences."

*United States v. Kwai Fun Wong*, 575 U.S. 402, 410 (2015). Critically, with respect

to filing deadlines, the Supreme Court has "made plain that most time bars are

nonjurisdictional." *Id.* It has also made clear, repeatedly, that typically "filing

deadlines [are] 'quintessential claim-processing rules,' which 'seek to promote the

orderly progress of litigation,' but do not deprive a court of authority to hear a

case." *Id.* (quoting *Henderson*, 575 U.S. at 410).

      Notably, the Supreme Court held that a separate provision in the Code

setting a thirty-day deadline for filing a petition with the Tax Court was

nonjurisdictional. *Boechler*, 596 U.S. at 211. The provision at issue in *Boechler*

reads as follows:

> The person may, within 30 days of a determination under this section, petition the Tax Court for review of such determination (and the Tax Court shall have jurisdiction with respect to such matter).

26 U.S.C. § 6330(d)(1). The Supreme Court acknowledged that the proper interpretation of the statute depended on the meaning of the phrase "such matter." *Boechler*, 596 U.S. at 204. The taxpayer contended that the phrase "refers only to the immediately preceding phrase: a 'petition [to] the Tax Court for review of such determination.'" *Id.* In contrast, the IRS argued that the phrase refers "to the entire first clause of the sentence, sweeping in the deadline and granting jurisdiction only over petitions filed within that time." *Id.*

The Court concluded that the jurisdictional grant contained in the parentheses was not linked to the filing deadline:

> Nothing else in the provision's text or structure advances the case for jurisdictional clarity. The deadline, which appears in the first independent clause of the sentence, explains what the taxpayer may do: "The person may, within 30 days of a determination under this section, petition the Tax Court for review of such determination." The jurisdictional grant, which appears in a parenthetical at the end of the sentence, speaks to what the Tax Court shall do: "(and the Tax Court shall have jurisdiction with respect to such matter)." As explained above, this language can be plausibly construed to condition the Tax Court's jurisdiction on a timely filing. But the condition would not be express and would be found in a parenthetical, which is typically used to convey an "aside" or "afterthought."

*Id.* at 205–06 (internal citations omitted). The Supreme Court arrived at this conclusion despite the proximity of the deadline to the jurisdictional statement,

noting that "[a] requirement 'does not become jurisdictional simply because it is placed in a section of a statute that also contains jurisdictional provisions.'" *Id.* at 206–07 (quoting *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 155 (2013).

It is noteworthy that the Court actually addressed Section 6213(a)'s putative jurisdictional deadline in *Boechler*. The IRS argued that Congress, when enacting Section 6330(d)(1), was aware that lower courts had already held that Section 6213(a)'s deadline was jurisdictional and therefore intended Section 6330(d)(1)'s to have the same effect. *Id.* at 208. The Supreme Court rejected what it called the IRS's "weakest argument," and pointed out that these lower court cases "almost all predate this Court's effort to 'bring some discipline' to the use of the term 'jurisdictional.'" *Id.* (quoting *Henderson*, 562 U.S. at 435). Despite the IRS's reliance on those cases and the Court's willingness to leave intact a long line of Supreme Court cases regarding jurisdictional requirements, the Court made clear: "[N]o such 'long line' of authority exists here." *Id*.

In conclusion, a nonjurisdictional interpretation of 6213(a)'s deadline aligns with Supreme Court jurisprudence. There is absolutely nothing in Section 6213(a) that even begins to support a jurisdictional interpretation of the time limitation. The First Circuit should therefore adopt the measured approach prescribed by the Supreme Court in *Boechler* and hold that the Tax Court erred in dismissing this case for lack of jurisdiction.

2.    The First Circuit should join the circuit that has adopted the
       nonjurisdictional interpretation of Section 6213(a)'s time limitation.

The Third Circuit, in a post-*Boechler* decision, expressly adopted a

nonjurisdictional interpretation of the filing deadline in Section 6213(a). *See Culp*,

75 F.4th at 202.

Picking up right where the Supreme Court left off, the Third Circuit notes in

*Culp* that "[i]f the § 6330(d)(1) deadline in *Boechler* fell short of being

jurisdictional, § 6213(a)'s limit must as well. For one, there is no 'clear tie between

the deadline and the jurisdictional grant.'" *Id.* at 201–02 (quoting *Boechler*, 596

U.S. at 207). The Third Circuit goes on to observe the following:

> The most pertinent part of § 6213(a) provides that "[w]ithin 90 days . .
> . after the notice of deficiency . . . is mailed . . . the taxpayer may file a
> petition with the Tax Court for a redetermination of the deficiency."
> Nothing in that language links the deadline to the Court's jurisdiction.
> Yet, elsewhere in § 6213(a), Congress specified that "[t]he Tax Court
> shall have no jurisdiction to enjoin any action or proceeding or order
> any refund under this subsection unless a timely petition for a
> redetermination of the deficiency has been filed and then only in respect
> of the deficiency that is the subject of such petition." 26 U.S.C. §
> 6213(a). So Congress knew how to limit the scope of the Tax Court's
> jurisdiction. *It expressly constrained the Tax Court from issuing
> injunctions or ordering refunds when a petition is untimely. But it did
> not similarly limit the Tax Court's power to review untimely
> redetermination petitions.*

*Id.* at 202 (emphasis added). This is the only construction of the statute that makes

sense. If the ninety-day filing deadline was jurisdictional, then the limit

emphasized above would be superfluous. The Tax Court would have no jurisdiction to do anything, much less issue injunctions or order refunds.

The First Circuit should join the Third Circuit and adopt the correct, nonjurisdictional interpretation of Section 6213(a)'s deadline.

## B. Because Section 6213(a)'s deadline is nonjurisdictional, it is subject to equitable tolling.

Nonjurisdictional time limits are presumptively subject to equitable tolling. *Boechler*, 596 U.S. at 209; *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). "The equitable tolling doctrine 'pauses the running of, or "tolls," a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action.'" *Culp*, 75 F.4th at 203 (quoting *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014)). To rebut the presumption, there must be "good reason to believe that Congress did *not* want the equitable tolling doctrine to apply." *United States v. Brockamp*, 519 U.S. 347, 350 (1997) (emphasis in original). However, neither the text nor the purpose of Section 6213(a) indicates that Congress intended to preclude equitable tolling.

1. The text of Section 6213(a) does not preclude equitable tolling.

The plain language of Section 6213(a) does not preclude equitable tolling. A deadline stated in an "unusually emphatic form" might indicate that Congress meant to preclude equitable tolling. *See id.* at 350. This can likewise be true where a statute's limitations are highly detailed and technical. *See id.* But where

20

"limitations statutes use fairly simple language . . . one can often plausibly read [them] as containing an implied 'equitable tolling' exception." *Id.*

Section 6213(a) is neither emphatic nor highly technical. It simply states that "[w]ithin 90 days . . . the taxpayer may file a petition with the Tax Court." 26 U.S.C. § 6213(a). This is in stark contrast to the detailed timing requirements that the Supreme Court observed in the Code's Section 6511:

> Section 6511 says, first, that a "[c]laim for . . . refund . . . of any tax . . . shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed . . . within 2 years from the time the tax was paid." 26 U.S.C. § 6511(a).

> It then says that "[n]o credit or refund shall be allowed or made after the expiration of the period of limitation prescribed . . . unless a claim for . . . refund is filed . . . within such period." § 6511(b)(1).

> It reiterates the point by imposing substantive limitations:

> "If the claim was filed by the taxpayer during the 3–year period . . . the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return . . . ." § 6511(b)(2)(A).

> And "[i]f the claim was not filed within such 3–year period, the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim." § 6511(b)(2)(B).

21

*Brockamp*, 519 U.S. at 350–51 (quoting 26 U.S.C. § 6511(a), (b)(1), (b)(2)(A), (b)(2)(B)) (alterations and omissions in original). The Court described this provision as "not simple," and noted that it "sets forth its limitations in a highly detailed technical manner, that, linguistically speaking, cannot easily be read as containing implicit exceptions." *Id.* at 350. These technical details, along with the specific list of exceptions to Section 6511's time limits (none of which included equitable tolling), led the Supreme Court to conclude that "Congress did not intend courts to read other unmentioned, open-ended, 'equitable' exceptions into" section 6511. *Id.* at 351–52.

Additionally, a ninety-day limitations period is comparatively short, and "[t]he presumption favoring equitable tolling is stronger when the limitations period is short." *Hedges v. United States*, 404 F.3d 744, 749 (3rd Cir. 2005); *see also Holland v. Florida*, 560 U.S. 631, 647 (2010) (calling a statute's one-year limitations period "not particularly long").

In sum, the text of the statute does not preclude the application of equitable tolling.

2. <u>The purpose of Section 6213(a) supports equitable tolling.</u>

Section 6213(a)'s fundamental purpose is to provide taxpayers with an avenue to address a potential tax deficiency before the IRS imposes collections proceedings. At its core, Section 6213(a) safeguards taxpayers' rights as they

22

navigate complex and stressful legal proceedings, often unassisted by counsel. In its 2018 Annual Report to Congress, the Taxpayer Advocate Service ("TAS") noted that more than eighty percent of taxpayers appearing before the U.S. Tax Court are unrepresented.[4] National Taxpayer Advocate, *Annual Report to Congress 2018*, at 295 (2018), ARC18_Volume1_MostSeriousProblems.pdf. Under those circumstances, courts are often willing to apply equitable tolling. *Compare Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 397 (1982) (holding that a filing deadline under Title VII was subject to equitable tolling because plaintiffs often initiate employment discrimination claims unassisted), *with Auburn Reg'l*, 568 U.S. at 160 (holding that equitable tolling did not apply where Medicare payment system at issue applied to "'sophisticated' institutional providers assisted by legal counsel," who could typically identify payment issues within the requisite time period).

Applying equitable tolling to the deadline in Section 6213(a) just makes *sense*: If a pedestrian is hit by a car while crossing a street and subsequently falls into a coma, the statute of limitations for bringing their personal injury claim tolls while they are in a coma. The same principle should apply if, for good reasons, a taxpayer is unable to file a petition to a notice of deficiency within ninety days.

---

[4] Incidentally, the TAS recently recommended that Congress clarify that equitable judicial doctrines apply to all deadlines for bringing tax litigation. *See* National Taxpayer Advocate, *2025 Purple Book* 106–09 (Dec. 31, 2024), ARC24_PurpleBook_07_StrengthTPR_45.pdf.

The context of Section 6213(a) does not preclude equitable tolling and, in fact, its purpose is furthered by the application of equitable judicial doctrines rather than hardline, black-and-white rules.

Because the application of equitable tolling is not barred by the text of the statute and furthers the statute's purposes, this Court should hold that the ninety-day filing deadline in Section 6213(a) can be equitably tolled when the circumstances require.

3.      The facts of this case demonstrate the right to equitable tolling.

The same facts that were presented to the Tax Court regarding the IRS's lack of due diligence efforts also support equitable tolling in this case.  Those facts include that Holdings filed its petition within fifteen days of receiving notice of the assessment (provided by the IRS to Charters' attorney over the telephone). Accordingly, Kyick Holdings, LLC, requests that this Court find that the time period for filing the petition in this case was equitably tolled and that its petition is deemed timely.

## CONCLUSION

In conclusion, Holdings respectfully asks this Court to reverse the Tax Court's decision finding that the IRS did not exercise reasonable diligence in mailing the Notice of Transferee Liability to the correct address. Alternatively, if the Court determines that the IRS did exercise reasonable diligence, Holdings

24

requests that this Court holds that the ninety-day deadline in Section 6213(a) is a nonjurisdictional deadline that is subject to equitable tolling and, consequently, that the facts presented to the Tax Court demonstrate that Holdings was entitled to equitable tolling.

Dated: July 7, 2025

/s/ Daniel L. Cummings
John W. Geismar, Esq. 25954
Daniel L. Cummings, Esq., Bar No. 25614
William F. Campbell, Esq., Bar No. 1213361
Lucy P. Weaver, Esq., Bar No. 1218498
Attorneys for Petitioner-Appellant

Norman, Hanson & DeTroy, LLC
220 Middle Street
P.O. Box 4600
Portland, ME 04112-4600
(207) 774-7000
jgeismar@nhdlaw.com
dcummings@nhdlaw.com
wcampbell@nhdlaw.com
lweaver@nhdlaw.com

# CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type-Style Requirements

    1. This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,019 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

    2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in size 14 Times New Roman typeface.

Dated: July 7, 2025

/s/ Daniel L. Cummings
John W. Geismar, Esq., Bar No. 25954
Daniel L. Cummings, Esq., Bar No. 25614
William F. Campbell, Esq., Bar No. 1213361
Lucy P. Weaver, Esq., Bar No. 1218498
Attorneys for Petitioner-Appellant

Norman, Hanson & DeTroy, LLC
220 Middle Street
P.O. Box 4600
Portland, ME 04112-4600
(207) 774-7000
jgeismar@nhdlaw.com
dcummings@nhdlaw.com
wcampbell@nhdlaw.com
lweaver@nhdlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document (Brief of Petitioner-Appellant) with the Clerk of Court, United States Court of Appeals for the First Circuit, using the CM/ECF system, which will send notification of such filing by the Notice of Docket Activity to ECF Filers of Record, including registered counsel of record as follows:

Rachel I. Wollitzer, Esq.
rachel.i.wollitzer@usdoj.gov


Dated: July 7, 2025                     /s/ Daniel L. Cummings
                                        John W. Geismar, Esq., Bar No. 25954
                                        Daniel L. Cummings, Esq., Bar No. 25614
                                        William F. Campbell, Esq., Bar No. 1213361
                                        Lucy P. Weaver, Esq., Bar No. 1218498
                                        Attorneys for Petitioner-Appellant

                                        Norman, Hanson & DeTroy, LLC
                                        220 Middle Street
                                        P.O. Box 4600
                                        Portland, ME 04112-4600
                                        (207) 774-7000
                                        jgeismar@nhdlaw.com
                                        dcummings@nhdlaw.com
                                        wcampbell@nhdlaw.com
                                        lweaver@nhdlaw.com

*ADDENDUM*

**ADDENDUM**
**TABLE OF CONTENTS**

Order of Dismissal for Lack of Jurisdiction ..................................................... 1

26 U.S.C. § 6901 ...................................................................................... 8

26 U.S.C. § 6213 ...................................................................................... 11

26 C.F.R. § 301.6212–2 ............................................................................ 12



# United States Tax Court
## Washington, DC 20217

KYICK HOLDINGS, LLC,
TRANSFEREE,

        Petitioner

        v.

COMMISSIONER OF INTERNAL
REVENUE,

        Respondent

Docket No. 11594-23.

## ORDER OF DISMISSAL FOR LACK OF JURISDICTION

On January 20, 2023, Kyick Holdings, LLC (petitioner), filed the Petition in this case. On September 6, 2023, respondent filed a Motion to Dismiss for Lack of Jurisdiction (Motion to Dismiss) on the ground that "the [P]etition was not filed within the time prescribed by I.R.C. §§ 6213(a), 7502, or 6901."[1] On September 28, 2023, petitioner filed an Objection to Motion to Dismiss for Lack of Jurisdiction. On October 19, 2023, respondent filed a Response to Objection to Motion to Dismiss for Lack of Jurisdiction. On November 27, 2023, petitioner filed a Reply to Response to Objection to Motion to Dismiss for Lack of Jurisdiction. On June 14, 2024, this case was assigned to the undersigned solely to dispose of respondent's Motion to Dismiss. On October 7, 2024, a one-day remote hearing was conducted in this case to consider respondent's Motion to Dismiss, to receive evidence, and to consider arguments of the parties; counsel for both parties were present at the hearing and were heard.

### *Background*

The following facts are derived from the parties' pleadings and motion papers, including the Stipulation of Facts and Exhibits attached thereto. These facts are stated solely for the purpose of deciding the above-referenced motion and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C. or Code), in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

**Entered and Served 01/31/25**

Petitioner filed Form 1065, U.S. Return of Partnership Income, for the taxable year 2021 listing its address as 4 Western Avenue, Kennebunk, Maine 04043. On August 30, 2022, the Internal Revenue Service (IRS) mailed a notice of transferee liability to petitioner determining a deficiency of $696,270 in its income tax for the 2012 through 2019 tax years. The notice asserts transferee liability against petitioner, related to the 2012 through 2019 tax liabilities of transferor Dwight M. Raymond. The notice, which was mailed by certified mail to the Western Avenue address, was returned to IRS marked "unclaimed." The record indicates that the notice of transferee liability was mailed to the Western Avenue address on the basis of petitioner's most recently filed tax return and information in IRS's Integrated Data Retrieval System.

In a separate notice of transferee liability, the IRS identifies a second transferee, Kyick Charters, LLC (Charters) again related to the 2012 through 2019 tax liabilities of Mr. Raymond. Charters' 2021 tax return also listed the Western Avenue address–the same address used by petitioner. However, subsequent to the filing of its 2021 tax return, Charters filed a Form 941, Employer's Quarterly Federal Tax Return, for the second quarter of 2022 in July 2022, listing Charters' address as P.O. Box 2664, Kennebunkport, Maine 04046. In August 2022, the IRS mailed a notice to Charters using the P.O. Box address. Charters received the notice in that case and filed a timely petition with this Court. Charters is a separate taxpayer from petitioner, files its own separate tax returns, and respondent keeps a separate file on Charters.

During its investigation into petitioner's and Charters' transferee liabilities, the IRS had access to the County tax assessor's property record card for the property at 4 Western Avenue and an asset purchase agreement, which both list petitioner's mailing address as P.O. Box 2664. The property at Western Avenue is owned by petitioner.

On January 20, 2023, petitioner filed its Petition with this Court. Petitioner had a principal place of business in Maine when it filed its Petition.

*Discussion*

I.    *Arguments of the Parties*

    a.    *Petitioner's Argument*

Petitioner states respondent cannot rely on the fact that 4 Western Avenue address was its "last known address" since the IRS should have known that petitioner had a different mailing address, and the IRS should have exercised "reasonable diligence" to ascertain the correct mailing address of petitioner.

Petitioner also argues that during the investigation into its alleged transferee liability, the IRS came to know that petitioner and Charters shared the same mailing address. Petitioner makes this argument through the fact that Charters (like petitioner) listed the Western Avenue address on its 2021 tax return; however, the

IRS mailed a notice of transferee liability to Charters to the P.O. Box 2664 address and not to the Western Avenue address.

> ### b.    Respondent's Argument

Respondent disputes petitioner's argument and contends that the IRS properly sent the notice of transferee liability to petitioner's last known address, as found on petitioner's most recent federal tax return. Because the notice was properly sent on August 30, 2022, respondent contends the last day to timely file a petition with this Court was November 28, 2023. Petitioner, however, did not file its Petition until January 20, 2023. Therefore, respondent contends, the Petition was not filed within the time prescribed by sections 6901, 6213(a), or 7502.

## II.    Jurisdiction

This Court is a court of limited jurisdiction and may exercise jurisdiction only to the extent provided by Congress. *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985). Jurisdiction must be proven affirmatively, and a taxpayer invoking our jurisdiction bears the burden of proving that we have jurisdiction over the case. *See David Dung Le, M.D., Inc., v. Commissioner*, 114 T.C. 268, 270 (2000), *aff'd*, 22 F. App'x 837 (9th Cir. 2001); *Romann v. Commissioner*, 111 T.C. 273, 280 (1998).

The Court's jurisdiction in a deficiency case is predicated on the issuance of a valid notice of deficiency and the filing of a timely petition. I.R.C. §§ 6213, 7442; Rule 13(a), (c); *Hallmark Rsch. Collective v. Commissioner*, 159 T.C. 126, 166–167 (2022); *Monge v. Commissioner*, 93 T.C. 22, 27 (1989); *see Armstrong v. Commissioner*, 15 F.3d 970, 973 n.2 (10th Cir. 1994), *aff'g* T.C. Memo. 1992-328.

Transferee liability cases, such as this one, are akin to deficiency cases under section 6213 and are treated procedurally in the same manner as deficiency cases. *See Kellog v. Commissioner*, 88 T.C. 167, 175 (1987) (citing Treas. Reg. § 301.6901-1(a)(3), and finding that (1) "pursuant to section 6213(a) a transferee may petition our Court for redetermination of his transferee liability only after a notice of transferee liability authorized by section 6901 has been determined and is issued under the provisions of section 6212" and (2) "[a]s in the case of a notice of deficiency, the requisite content of a notice of transferee liability is not prescribed by statute or regulations"); *Looper v. Commissioner*, 73 T.C. 690, 692 n.3 (1980) ("Although [section] 6213(a) is couched in terms of notice of deficiency, [section] 6901(a) indicates that it applies to a notice of transferee liability as well."); *Dillman v. Commissioner*, 64 T.C. 797, 800 (1975) (finding that the effect of section 6901 "is to require the Commissioner, before assessing transferee liability for income tax, to issue the transferee a notice of transferee liability just as he must mail to a taxpayer a notice of deficiency before assessing additional income tax"); *see also Phillips v. Commissioner*, 42 F.2d 177, 179 (2d Cir. 1930) (Finding that section 6901 evidences "a clear intention to give a transferee the same right as a taxpayer in respect to seeking a review of a proposed assessment by appeal to the Board of Tax Appeals and to [this] Court"), *aff'g* 15 B.T.A. 1218 (1929), *aff'd*, 283 U.S. 589 (1931). Accordingly,

the legal standard before this Court, determining whether we hold jurisdiction, is identical to that in a deficiency proceeding.

Section 6212(a) expressly authorizes the Commissioner, after determining a deficiency, to send a notice of deficiency to the taxpayer by certified or registered mail. Under the Code, it is sufficient for jurisdictional purposes if the Commissioner mails the notice of deficiency to the taxpayer's "last known address." I.R.C. § 6212(b); *Frieling v. Commissioner*, 81 T.C. 42, 52 (1983). If a notice of deficiency is mailed to the taxpayer at the taxpayer's last known address, actual receipt of the notice is immaterial. *Gyorgy v. Commissioner*, 779 F.3d 466, 480 (7th Cir. 2015); *King v. Commissioner*, 857 F.2d 676, 679 (9th Cir. 1988), *aff'g* 88 T.C. 1042 (1987); *Yusko v. Commissioner*, 89 T.C. 806, 810 (1987); *Frieling, supra*, 81 T.C. at 52.

For taxpayers residing in the United States, the petition must be filed within 90 days after the notice of deficiency is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day). I.R.C. § 6213(a). The Court lacks the authority to extend the 90-day period, and we must dismiss a case for lack of jurisdiction if the petition is not filed within the statutorily prescribed time. *Hallmark*, 159 T.C. at 166–167; *Joannou v. Commissioner*, 33 T.C. 868, 869 (1960).

There is no dispute that the Petition in this case was not filed within the 90-day period prescribed in section 6213(a). Although respondent mailed the notice of transferee liability in question on August 30, 2022, the Petition was not filed until January 20, 2023.

Under the circumstances, it is evident that the Court lacks jurisdiction in this case. Nonetheless, we must decide whether dismissal of this case should be premised on petitioner's failure to file a timely petition under section 6213(a) or on respondent's failure to issue a valid notice of transferee liability under section 6901. *See Pietanza v. Commissioner*, 92 T.C. 729, 735–736 (1989), *aff'd without published opinion*, 935 F.2d 1282 (3d Cir. 1991). In this regard, we must determine whether respondent mailed the notice of transferee liability to petitioner's last known address.

III.   *Petitioner's Last Known Address*

Section 6212(b)(1)–and other sections in the Code–requires the IRS to send notice to a taxpayer's "last known address." The Code, however, does not define this phrase, and for years neither did the implementing regulations. Effective January 29, 2001, the U.S. Treasury Secretary (Treasury) promulgated a regulation entitled "Definition of Last Known Address." *See* 66 Fed. Reg. 2817 (Jan. 12, 2001) (notice of final rulemaking). A taxpayer's "last known address" is now defined as "the address that appears on the taxpayer's most recently filed and properly processed federal tax return, unless the IRS is given "clear and concise notification" of a different address." Treas. Reg. § 301.6212-2(a).

The taxpayer may submit a change of address by indicating a new address on his or her return, by filing a written or electronic change of address with the IRS, or

by providing an updated address to the USPS for inclusion in its National Change of Address (NCOA) database. Treas. Reg. § 301.6212-2(a) and (b). A taxpayer's written notification regarding change of address will be considered "properly processed" 45 days after the date of receipt by one of the following: (1) the IRS Submission Processing Campus serving the taxpayer's old address; (2) the Customer Service Division in the local area office; or (3) the IRS employee who contacted the taxpayer regarding the filing of a return or an adjustment in the taxpayer's account. Rev. Proc. 2010-16, § 5.02(3), 2010-19 I.R.B. 664, 666.

Even before the effective date of Treas. Reg. § 301.6212-2(a), courts defined the term "last known address" just as (or consistent with how) this regulation has defined it. *See, e.g., King v. Commissioner*, 857 F.2d at 681; *Abeles v. Commissioner*, 91 T.C. 1019, 1035 (1988); *Alta Sierra Vista, Inc. v. Commissioner*, 62 T.C. 367, 374 (1974), *aff'd*, 538 F.2d 334 (9th Cir. 1976). For example, in *Abeles*, 91 T.C. at 1035, we held that "a taxpayer's 'most recently filed return' is that return which has been properly processed by an IRS service center such that the address appearing on such return was available to respondent's agent when that agent prepared to send a notice of deficiency in connection with an examination of a previously filed return." *See also, Chapman v. Commissioner*, T.C. Memo. 2019-110 at *12.

If a notice of transferee liability is sent to a taxpayer's last known address–as in this case–actual receipt is immaterial and the notice remains valid. *See, e.g., Gyorgy*, 779 F.3d at 476; *United States v. Zolla*, 724 F.2d 808, 810 (9th Cir. 1984).

It is undisputed that the IRS mailed the notice of transferee liability to the 4 Western Avenue address, the same address appearing on petitioner's most recently filed tax return, and petitioner took no action with the IRS to change its address by written notification or otherwise. *See* Treas. Reg. § 301.6212–2(a); *Gyorgy*, 779 F.3d at 476. Accordingly, we reject petitioner's first argument that the IRS improperly determined the 4 Western Avenue address to be petitioner's "last known address" for notice.

IV.    *IRS's Reasonable Diligence*

In a last known address dispute, we have said the taxpayer bears the burden to show that he submitted clear and concise notification of a change of address to the IRS such that his last known address is not that shown on his last tax return. *See Yusko v. Commissioner*, 89 T.C. 806, 808 (1987). However, courts have also said the IRS must use "reasonable diligence" to determine a taxpayer's last known address in accordance with the applicable regulations. *See Gyorgy v. Commissioner*, 779 F.3d at 478; *Buffano v. Commissioner*, T.C. Memo. 2007-32, slip op. at 12; *Phillips v. Commissioner*, T.C. Memo. 2024-44, at *6. Similarly, the IRS was found to have failed to exercise reasonable diligence by sending a notice of deficiency to an address from which prior correspondence had been returned as "undeliverable." *See Terrell v. Commissioner*, 625 F.3d 254 (5th Cir. 2010).

Generally, the party invoking this Court's jurisdiction bears the burden of demonstrating that it exists. *See David Dung Le, M.D., Inc.*, 114 T.C. at 270. Usually, the application of this principle places the burden of proof on the taxpayer, who invoked the jurisdiction of the Court. It is well established that the burden falls upon the taxpayer to keep the IRS informed of his proper address. *See Mollet v. Commissioner*, 82 T.C. 618, 624–25 (1984), *aff'd*, 757 F.2d 286 (11th Cir. 1985) (unpublished table decision); *Alta Sierra Vista, Inc. v. Commissioner*, 62 T.C. 367, 374 (1974), *aff'd*, 538 F.2d 334 (9th Cir. 1976) (unpublished table decision).

Petitioner's second argument contends that the IRS failed to exercise reasonable diligence in determining its correct mailing address. However, there is no evidence supporting petitioner's contention; namely that respondent was aware, either before or immediately after the mailing of the notice of transferee liability, that the 4 Western Avenue address was incorrect. First, petitioner has offered no evidence that it had given "clear and concise notification" of any address other than that used by the IRS. *See* Treas. Reg. § 301.6212–2(a).

Second, the notice of transferee liability mailed to petitioner was returned to the IRS marked as "unclaimed"[2], indicating that a certified mail notice of attempted delivery was left at the 4 Western Avenue address. *See, e.g., Erhard v. Commissioner*, T.C. Memo. 1994-344, *aff'd* 87 F.3d 273 (9th Cir. 1996). In other words, petitioner's argument fails because the facts here are distinguishable from *Terrell, supra*. As there is a difference between "undeliverable" and "unclaimed" certified mail and there is no evidence in the record that the IRS was aware either before or immediately after the mailing of the notice that petitioner's last known address was incorrect. *See Thomas v. Commissioner*, T.C. Memo. 1998-438, slip op. at 9–10, *aff'd without published opinion*, 194 F.3d 1305 (4th Cir. 1999).

Lastly, we conclude petitioner's contention that the IRS should have mailed petitioner's notice to the P.O. Box 2664 address–like the IRS did for Charters–is without merit. The notice to Charters was mailed to its last known address, the P.O. Box 2664 address, as listed on Charter's recently filed Form 941. While Petitioner's notice was mailed to its last known address which remained the 4 Western Avenue address.

Accordingly, under the circumstances, we are unable to conclude that actions by the IRS in this case lacked "reasonable diligence."

---

[2] The USPS returns certified mailings to senders generally marked as "unclaimed", "addressee unknown", "insufficient address" or "unable to forward." Here, we find the IRS was justified in believing that a notice of deficiency was mailed to the correct address and that petitioner simply failed to claim the notice, since it was returned by USPS marked "unclaimed."

Docket No.: 11594-23

V.    *Conclusion*

In sum, we conclude that the notice of transferee liability mailed by IRS was sent to petitioner's last known address and that the IRS actions in this case do not lack "reasonable diligence." The notice of transferee liability was mailed on August 30, 2022, and the 90-day period for filing a petition with this Court ended on November 28, 2022. Petitioner did not file his Petition until January 20, 2023. Accordingly, we are obligated to grant respondent's Motion to Dismiss for Lack of Jurisdiction since we lack jurisdiction in this matter.

Considering the foregoing, it is

ORDERED that respondent's Motion to Dismiss for Lack of Jurisdiction, filed on September 6, 2023, is granted and this case is dismissed for lack of jurisdiction.

**(Signed) Christian N. Weiler**
**Judge**

United States Code Annotated
   Title 26. Internal Revenue Code (Refs & Annos)
     Subtitle F. Procedure and Administration (Refs & Annos)
       Chapter 71. Transferees and Fiduciaries (Refs & Annos)

26 U.S.C.A. § 6901, I.R.C. § 6901

§ 6901. Transferred assets

Currentness

**(a) Method of collection.**--The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred:

  **(1) Income, estate, and gift taxes.**--

    **(A) Transferees.**--The liability, at law or in equity, of a transferee of property--

      **(i)** of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes),

      **(ii)** of a decedent in the case of a tax imposed by chapter 11 (relating to estate taxes), or

      **(iii)** of a donor in the case of a tax imposed by chapter 12 (relating to gift taxes),

     in respect of the tax imposed by subtitle A or B.

    **(B) Fiduciaries.**--The liability of a fiduciary under section 3713(b) of title 31, United States Code, in respect of the payment of any tax described in subparagraph (A) from the estate of the taxpayer, the decedent, or the donor, as the case may be.

  **(2) Other taxes.**--The liability, at law or in equity of a transferee of property of any person liable in respect of any tax imposed by this title (other than a tax imposed by subtitle A or B), but only if such liability arises on the liquidation of a partnership or corporation, or on a reorganization within the meaning of section 368(a).

**(b) Liability.**--Any liability referred to in subsection (a) may be either as to the amount of tax shown on a return or as to any deficiency or underpayment of any tax.

**(c) Period of limitations.**--The period of limitations for assessment of any such liability of a transferee or a fiduciary shall be as follows:

**(1) Initial transferee.**--In the case of the liability of an initial transferee, within 1 year after the expiration of the period of limitation for assessment against the transferor;

**(2) Transferee of transferee.**--In the case of the liability of a transferee of a transferee, within 1 year after the expiration of the period of limitation for assessment against the preceding transferee, but not more than 3 years after the expiration of the period of limitation for assessment against the initial transferor;

except that if, before the expiration of the period of limitation for the assessment of the liability of the transferee, a court proceeding for the collection of the tax or liability in respect thereof has been begun against the initial transferor or the last preceding transferee, respectively, then the period of limitation for assessment of the liability of the transferee shall expire 1 year after the return of execution in the court proceeding.

**(3) Fiduciary.**--In the case of the liability of a fiduciary, not later than 1 year after the liability arises or not later than the expiration of the period for collection of the tax in respect of which such liability arises, whichever is the later.

**(d) Extension by agreement.**--

**(1) Extension of time for assessment.**--If before the expiration of the time prescribed in subsection (c) for the assessment of the liability, the Secretary and the transferee or fiduciary have both consented in writing to its assessment after such time, the liability may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon. For the purpose of determining the period of limitation on credit or refund to the transferee or fiduciary of overpayments of tax made by such transferee or fiduciary or overpayments of tax made by the transferor of which the transferee or fiduciary is legally entitled to credit or refund, such agreement and any extension thereof shall be deemed an agreement and extension thereof referred to in section 6511(c).

**(2) Extension of time for credit or refund.**--If the agreement is executed after the expiration of the period of limitation for assessment against the taxpayer with reference to whom the liability of such transferee or fiduciary arises, then in applying the limitations under section 6511(c) on the amount of the credit or refund, the periods specified in section 6511(b)(2) shall be increased by the period from the date of such expiration to the date of the agreement.

**(e) Period for assessment against transferor.**--For purposes of this section, if any person is deceased, or is a corporation which has terminated its existence, the period of limitation for assessment against such person shall be the period that would be in effect had death or termination of existence not occurred.

**(f) Suspension of running of period of limitations.**--The running of the period of limitations upon the assessment of the liability of a transferee or fiduciary shall, after the mailing to the transferee or fiduciary of the notice provided for in section 6212 (relating to income, estate, and gift taxes) be suspended for the period during which the Secretary is prohibited from making the assessment in respect of the liability of the transferee or fiduciary (and in any event, if a proceeding in respect of the liability is placed on the docket of the Tax Court, until the decision of the Tax Court becomes final), and for 60 days thereafter.

**(g) Address for notice of liability.**--In the absence of notice to the Secretary under section 6903 of the existence of a fiduciary relationship, any notice of liability enforceable under this section required to be mailed to such person, shall, if mailed to the

person subject to the liability at his last known address, be sufficient for purposes of this title, even if such person is deceased, or is under a legal disability, or, in the case of a corporation, has terminated its existence.

**(h) Definition of transferee.**--As used in this section, the term "transferee" includes donee, heir, legatee, devisee, and distributee, and with respect to estate taxes, also includes any person who, under section 6324(a)(2), is personally liable for any part of such tax.

**(i) Extension of time.--**

    For extensions of time by reason of armed service in a combat zone, see section 7508.

**CREDIT(S)**

    (Aug. 16, 1954, c. 736, 68A Stat. 841; Pub.L. 94-455, Title XIX, § 1906(b)(13)(A), Oct. 4, 1976, 90 Stat. 1834; Pub.L. 97-258, § 3(f)(10), Sept. 13, 1982, 96 Stat. 1065; Pub.L. 115-141, Div. U, Title IV, § 401(a)(322), Mar. 23, 2018, 132 Stat. 1199.)

Notes of Decisions (390)

26 U.S.C.A. § 6901, 26 USCA § 6901
Current through P.L. 119-18. Some statute sections may be more current, see credits for details.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    3



KeyCite Yellow Flag
Proposed Legislation

United States Code Annotated
    Title 26. Internal Revenue Code (Refs & Annos)
        Subtitle F. Procedure and Administration (Refs & Annos)
            Chapter 63. Assessment
                Subchapter B. Deficiency Procedures in the Case of Income, Estate, Gift, and Certain Excise Taxes (Refs & Annos)

26 U.S.C.A. § 6213, I.R.C. § 6213

§ 6213. Restrictions applicable to deficiencies; petition to Tax Court

Currentness

**(a) Time for filing petition and restriction on assessment.**--Within 90 days, or 150 days if the notice is addressed to a person outside the United States, after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. Except as otherwise provided in section 6851, 6852, or 6861 no assessment of a deficiency in respect of any tax imposed by subtitle A, or B, chapter 41, 42, 43, or 44 and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day or 150-day period, as the case may be, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 7421(a), the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court, including the Tax Court, and a refund may be ordered by such court of any amount collected within the period during which the Secretary is prohibited from collecting by levy or through a proceeding in court under the provisions of this subsection. The Tax Court shall have no jurisdiction to enjoin any action or proceeding or order any refund under this subsection unless a timely petition for a redetermination of the deficiency has been filed and then only in respect of the deficiency that is the subject of such petition. Any petition filed with the Tax Court on or before the last date specified for filing such petition by the Secretary in the notice of deficiency shall be treated as timely filed.

**(b) Exceptions to restrictions on assessment.**--

**(1) Assessments arising out of mathematical or clerical errors.**--If the taxpayer is notified that, on account of a mathematical or clerical error appearing on the return, an amount of tax in excess of that shown on the return is due, and that an assessment of the tax has been or will be made on the basis of what would have been the correct amount of tax but for the mathematical or clerical error, such notice shall not be considered as a notice of deficiency for the purposes of subsection (a) (prohibiting assessment and collection until notice of the deficiency has been mailed), or of section 6212(c)(1) (restricting further deficiency letters), or of section 6512(a) (prohibiting credits or refunds after petition to the Tax Court), and the taxpayer shall have no right to file a petition with the Tax Court based on such notice, nor shall such assessment or collection be prohibited by the provisions of subsection (a) of this section. Each notice under this paragraph shall set forth the error alleged and an explanation thereof.

**(2) Abatement of assessment of mathematical or clerical errors.**--

Code of Federal Regulations
  Title 26. Internal Revenue
    Chapter I. Internal Revenue Service, Department of the Treasury
      Subchapter F. Procedure and Administration
        Part 301. Procedure and Administration (Refs & Annos)
          Assessment
            Deficiency Procedures

26 C.F.R. § 301.6212–2, Treas. Reg. § 301.6212–2

§ 301.6212–2 Definition of last known address.

Currentness

**(a) General rule.** Except as provided in paragraph (b)(2) of this section, a taxpayer's last known address is the address that appears on the taxpayer's most recently filed and properly processed Federal tax return, unless the Internal Revenue Service (IRS) is given clear and concise notification of a different address. Further information on what constitutes clear and concise notification of a different address and a properly processed Federal tax return can be found in Rev. Proc. 90–18 (1990–1 C.B. 491) or in procedures subsequently prescribed by the Commissioner.

**(b) Address obtained from third party—(1) In general.** Except as provided in paragraph (b)(2) of this section, change of address information that a taxpayer provides to a third party, such as a payor or another government agency, is not clear and concise notification of a different address for purposes of determining a last known address under this section.

**(2) Exception for address obtained from the United States Postal Service—(i) Updating taxpayer addresses.** The IRS will update taxpayer addresses maintained in IRS records by referring to data accumulated and maintained in the United States Postal Service (USPS) National Change of Address database that retains change of address information for thirty-six months (NCOA database). Except as provided in paragraph (b)(2)(ii) of this section, if the taxpayer's name and last known address in IRS records match the taxpayer's name and old mailing address contained in the NCOA database, the new address in the NCOA database is the taxpayer's last known address, unless the IRS is given clear and concise notification of a different address.

**(ii) Duration of address obtained from NCOA database.** The address obtained from the NCOA database under paragraph (b)(2)(i) of this section is the taxpayer's last known address until one of the following events occurs—

(A) The taxpayer files and the IRS properly processes a Federal tax return with an address different from the address obtained from the NCOA database; or

(B) The taxpayer provides the Internal Revenue Service with clear and concise notification of a change of address, as defined in procedures prescribed by the Commissioner, that is different from the address obtained from the NCOA database.

**(3) Examples.** The following examples illustrate the rules of paragraph (b)(2) of this section:

Case: 25-1429    Document: 00118309958    Page: 49    Date Filed: 07/08/2025    Entry ID: 6733986
§ 301.6212–2 Definition of last known address., 26 C.F.R. § 301.6212–2

Add. 13

**Example 1.** (i) A is an unmarried taxpayer. The address on A's 1999 Form 1040, U.S. Individual Income Tax Return, filed on April 14, 2000, and 2000 Form 1040 filed on April 13, 2001, is 1234 Anyplace Street, Anytown, USA 43210. On May 15, 2001, A informs the USPS of a new permanent address (9876 Newplace Street, Newtown, USA 12345) using the USPS Form 3575, "Official Mail Forwarding Change of Address Form." The change of address is included in the weekly update of the USPS NCOA database. On May 29, 2001, A's address maintained in IRS records is changed to 9876 Newplace Street, Newtown, USA 12345.

(ii) In June 2001 the IRS determines a deficiency for A's 1999 tax year and prepares to issue a notice of deficiency. The IRS obtains A's address for the notice of deficiency from IRS records. On June 15, 2001, the Internal Revenue Service mails the notice of deficiency to A at 9876 Newplace Street, Newtown, USA 12345. For purposes of section 6212(b), the notice of deficiency mailed on June 15, 2001, is mailed to A's last known address.

**Example 2.** (i) The facts are the same as in Example 1, except that instead of determining a deficiency for A's 1999 tax year in June 2001, the IRS determines a deficiency for A's 1999 tax year in May 2001.

(ii) On May 21, 2001, the IRS prepares a notice of deficiency for A and obtains A's address from IRS records. Because A did not inform the USPS of the change of address in sufficient time for the IRS to process and post the new address in Internal Revenue Service's records by May 21, 2001, the notice of deficiency is mailed to 1234 Anyplace Street, Anytown, USA 43210. For purposes of section 6212(b), the notice of deficiency mailed on May 21, 2001, is mailed to A's last known address.

**Example 3.** (i) C and D are married taxpayers. The address on C and D's 2000 Form 1040, U.S. Individual Income Tax Return, filed on April 13, 2001, and 2001 Form 1040 filed on April 15, 2002, is 2468 Spring Street, Little City, USA 97531. On August 15, 2002, D informs the USPS of a new permanent address (8642 Peachtree Street, Big City, USA 13579) using the USPS Form 3575, "Official Mail Forwarding Change of Address Form." The change of address is included in the weekly update of the USPS NCOA database. On August 29, 2002, D's address maintained in IRS records is changed to 8642 Peachtree Street, Big City, USA 13579.

(ii) In October 2002 the IRS determines a deficiency for C and D's 2000 tax year and prepares to issue a notice of deficiency. The Internal Revenue Service obtains C's address and D's address for the notice of deficiency from IRS records. On October 15, 2002, the IRS mails a copy of the notice of deficiency to C at 2468 Spring Street, Little City, USA 97531, and to D at 8642 Peachtree Street, Big City, USA 13579. For purposes of section 6212(b), the notices of deficiency mailed on October 15, 2002, are mailed to C and D's respective last known addresses.

**(c) Last known address for all notices, statements, and documents.** The rules in paragraphs (a) and (b) of this section apply for purposes of determining whether all notices, statements, or other documents are mailed to a taxpayer's last known address whenever the term last known address is used in the Internal Revenue Code or the regulations thereunder.

**(d) Effective Date—(1) In general.** Except as provided in paragraph (d)(2) of this section, this section is effective on January 29, 2001.

**(2) Individual moves in the case of joint filers.** In the case of taxpayers who file joint returns under section 6013, if the NCOA database contains change of address information for only one spouse, paragraphs (b)(2) and (3) of this section will not apply to notices, statements, and other documents mailed before the processing of the taxpayers' 2000 joint return.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    2