# No. 25-1429

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

───────────────

### KYICK HOLDINGS, LLC, TRANSFEREE,

#### Petitioner-Appellant,

#### v.

### SCOTT BESSENT, ACTING COMMISSIONER OF INTERNAL REVENUE SERVICE,

#### Respondent-Appellee.

───────────────

## ON APPEAL FROM THE ORDER OF
## THE UNITED STATES TAX COURT

───────────────

## BRIEF FOR THE APPELLEE

───────────────

ELLEN PAGE DELSOLE          (202) 514-8128
  Court of Appeals Bar No. 71201
SHERRA WONG                 (202) 616-1882
  Court of Appeals Bar No. 1174978
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

# TABLE OF CONTENTS

**Page**

Table of contents.....................................................................i
Table of authorities ...........................................................iv
Reasons why oral argument should be heard .......................xii
Jurisdictional statement .......................................................1
Statement of the issues ........................................................2
Statement of the case ..........................................................2

    A.    Factual background ......................................................2

           1.    The IRS's mailing of Holdings's notice to 4 Western Avenue.....................................................2

           2.    The notice of transferee liability to Kyick Charters, LLC .................................................4

    B.    The Tax Court proceedings ...........................................5

           1.    The IRS's motion to dismiss.................................5

           2.    The Tax Court opinion.........................................5

Summary of argument ..........................................................6
Argument ...........................................................................10

    I.    The Tax Court correctly held that the IRS sent the notice of liability to Holdings's last known address .............10

    Standard of review ..............................................................10

    A.    The IRS sent Holdings's notice to Holdings's last known address .............................................................11

    B.    The IRS exercised reasonable diligence in ascertaining Holdings's last known address ...............13

II.  The Tax Court correctly dismissed Holdings's untimely petition ........................................................................ 21

Standard of review ................................................................ 21

A.  Holdings's waivers make it unnecessary to delve into its equitable tolling argument ............................. 21

B.  Section 6213(a)'s 90-day deadline is a jurisdictional limitation and as such cannot be tolled .............................................................................. 26

    1.  Longstanding precedent holds that §6213(a)'s deadline is jurisdictional ..................................... 26

    2.  Text, context, and historical treatment make a clear statement that the 90-day deadline is jurisdictional ......................................................... 30

        a.  The text: Congress put the jurisdictional grant and the petition deadline in the same sentence and inextricably bound them ............................ 32

        b.  Context:  §6213(a)'s unique role in our scheme of administrative collection shows that the deadline limits the Tax Court's power ............................................... 39

            (i)  Section 6213(c) and the shift to the assessment-and-collection phase if no timely petition is filed ...................... 40

            (ii)  That Congress made the Tax Court's power to enjoin assessment and collection dependent on a timely petition indicates the petition-filing deadline is jurisdictional .................. 42

(iii) Special rules allowing later filing in limited situations indicate Congress's understanding that §6213(a)'s deadline cannot be tolled .................. 44

(iv) Sections 6512(a), 7481, 7482, and 7422(e) ............................................. 47

(v) Section 7459(d) ................................. 51

3. History: Section 6213(a)'s history fortifies the jurisdictional reading ........................................... 57

C. Section 6213(a)'s deadline cannot be equitably tolled even if it were not jurisdictional ........................ 59

Conclusion ............................................................................... 65

Certificate of compliance .......................................................... 66

# TABLE OF AUTHORITIES

**Cases:**                                                     **Page(s)**

*Allen v. Commissioner,*
No. 22-12537, 2022 WL 17825934 (11th Cir. Dec. 21, 2022) .................................................................................. 30

*Arbaugh v. Y&H Corp.,*
546 U.S. 500 (2006) ................................................................ 29

*Arellano v. McDonough,*
598 U.S. 1 (2023) .................................................................... 61

*Armstrong v. Commissioner,*
15 F.3d 970 (10th Cir. 1994) ................................ 10, 13, 14, 15, 18, 19

*Athens Pizza of Jaffrey, Inc. v. Commissioner,*
134 F.3d 361, 1998 WL 42182 (1st Cir. 1998) ..................... 27

*Atighi v. Commissioner,*
No. 21-71417, 2022 WL 17223046 (9th Cir. Nov. 25, 2022) .............. 30

*Baral v. United States,*
528 U.S. 431 (2000) ................................................................ 26

*Boechler P.C. v. Commissioner,*
596 U.S. 199 (2022) ........................................ 29, 30, 31, 34, 43, 59, 62

*Borgman v. Commissioner,*
888 F.2d 916 (1st Cir. 1989) .................................................. 12

*Bull v. United States,*
295 U.S. 247 (1935) ................................................................ 64

*Buller v. Commissioner,*
No. 24-1557, ___ F.4th ___, 2025 WL 2348969 (2d Cir. Aug. 14, 2025) ................................................................ 29, 52

*Commissioner v. Engle,*
464 U.S. 206 (1984) ................................................................ 39

*Commissioner v. McCoy,*
484 U.S. 3 (1987) ............................................................. 26, 40

*Commissioner v. Smith Paper, Inc.,*
222 F.2d 126 (1st Cir. 1955) ................................................... 1

*Commissioner v. Sunnen,*
333 U.S. 591 (1948) ................................... 40, 47, 48, 52, 54

*Culp v. Commissioner,*
75 F.4th 196 (3d Cir. 2023) .............................. 23, 24, 29, 51

**Cases (continued):** Page(s)

*Drake v. Commissioner,*
511 F.3d 65 (1st Cir. 2007) ..................................... 21

*Est. of Branson v. Commissioner,*
264 F.3d 904 (9th Cir. 2001) .................................. 38

*Est. of Smith v. Commissioner,*
429 F.3d 533 (5th Cir. 2005) .................................. 38

*Ferre v. Commissioner,*
718 F.2d 6 (1st Cir. 1983) ....................... 21, 27, 57

*Follum v. Commissioner,*
128 F.3d 118 (2d Cir. 1997) ........................... 13, 17

*Forest Grove Sch. Dist. v. T.A.,*
557 U.S. 230 (2009) ............................................. 58

*Gaw v. Commissioner,*
45 F.3d 461 (D.C. Cir. 1995) ................................ 27

*U.S. ex rel. Girard Tr. Co. v. Helvering,*
301 U.S. 540 (1937) ....................................... 28, 52

*Gonzalez-Droz v. Gonzalez-Colon,*
660 F.3d 1 (1st Cir. 2011) ................................... 23

*Gregory v. Commissioner,*
839 F. App'x 745 (3d Cir. 2020) .......................... 17

*Grillo v. Commissioner,*
566 F. App'x 58 (2d Cir. 2014) ............................ 18

*Guthrie v. Sawyer,*
970 F.2d 733 (10th Cir. 1992) .............................. 19

*Gyorgy v. Commissioner,*
779 F.3d 466 (7th Cir. 2015) ............... 11, 13, 14, 15, 18, 20

*Hallmark Rsch. Collective v. Commissioner,*
159 T.C. 126 (2022)
.................................................................. *passim*

*Hanley v. United States,*
No. 94-1315, 1994 WL 723678 (1st Cir. 1994) ................... 48

*Hansen v. Commissioner,*
201 F.3d 427, 1998 WL 1247113 (1st Cir. 1998) .......... 26, 27

*Harrow v. Dep't of Def.,*
601 U.S. 480 (2024) ............................................. 32

**Cases (continued):** Page(s)

*Henderson ex rel. Henderson v. Shinseki,*
    562 U.S. 428 (2011) ................................................ 31, 32, 34
*Hibbs v. Winn,*
    542 U.S. 88 (2004) ...................................................... 39
*Appeal of Hurst, Anthony & Watkins,*
    1 B.T.A. 26 (1924) ...................................................... 49
*I.N.S. v. Phinpathya,*
    464 U.S. 183 (1984) ...................................................... 4
*Igartua v. United States,*
    626 F.3d 592 (1st Cir. 2010) ...................................... 22
*Irwin v. Dep't of Veterans Affairs,*
    498 U.S. 89 (1990) ...................................................... 25
*John R. Sand & Gravel Co. v. United States,*
    552 U.S. 130 (2008) ................................................ 58, 65
*Kaebel v. Commissioner,*
    770 F. App'x 726 (5th Cir. 2019) ............................... 18
*King v. Commissioner,*
    857 F.2d 676 (9th Cir. 1988) ...................................... 18
*Laing v. United States,*
    423 U.S. 161 (1976) ................................................ 28, 41
*Lane v. Pena,*
    518 U.S. 187 (1996) .................................................... 35
*Lewis-Hall Iron Works v. Blair,*
    23 F.2d 972 (D.C. Cir. 1928) ...................................... 49
*Lozano v. Montoya Alvarez,*
    572 U.S. 1 (2014) ........................................................ 52
*In re Maali,*
    432 B.R. 348 (B.A.P. 1st Cir. 2010) ........................... 11
*Madrigal v. Holder,*
    572 F.3d 239 (6th Cir. 2009) ...................................... 33
*Marks v. Commissioner,*
    947 F.2d 983 (D.C. Cir. 1991) .................................... 15
*Miller v. United States,*
    604 U.S., 145 S. Ct. 839 (2025) ................................. 35
*MOAC Mall Holdings LLC v. Transform Holdco LLC,*
    598 U.S. 288 (2023) .................................................... 31

**Cases (continued):** **Page(s)**

*Moir v. United States,*
149 F.2d 455 (1st Cir. 1945) ............................................. 48

*Monsalvo v. Bondi,*
604 U.S. ___, 145 S. Ct. 1232 (2025) ................................. 33

*Morse v. I.R.S.,*
635 F.2d 701 (8th Cir. 1980)............................................. 12

*Moyer v. Commissioner,*
T.C. Memo. 2016-236 ...................................................... 37

*Mulder v. Commissioner,*
855 F.2d 208 (5th Cir. 1988)................................. 11, 17, 19

*Mullane v. U.S. Dep't of Just.,*
113 F.4th 123 (1st Cir. 2024)................................... 7, 22

*Neverson v. Farquharson,*
366 F.3d 32 (1st Cir. 2004) ................................... 21, 24

*Niemela v. United States,*
995 F.2d 1061, 1993 WL 198171 (1st Cir. 1993) ........ 12, 18

*NLRB v. Wyman-Gordon Co.,*
394 U.S. 759 (1969)........................................................ 24

*Old Colony Tr. Co. v. Commissioner,*
279 U.S. 716 (1929)...........................36, 38, 47, 48, 54

*Oquendo v. Commissioner,*
148 F.4th 820 (6th Cir. 2025) ......................................... 30

*Organic Cannabis Found., LLC v. Commissioner,*
962 F.3d 1082 (9th Cir. 2020)...............30, 31, 43, 44, 52

*Pace v. DiGuglielmo,*
544 U.S. 408 (2005).......................................................... 25

*Perfect Puppy, Inc. v. City of E. Providence, R.I.,*
807 F.3d 415 (1st Cir. 2015) ........................................... 23

*Reed Elsevier, Inc. v. Muchnick,*
559 U.S. 154 (2010) ................................................ 31, 57

*Riley v. Bondi,*
145 S. Ct. 2190 (June 26, 2025)...................................... 33

*Rudisill v. McDonough,*
601 U.S. 294 (2024)........................................................ 36

*Appeal of Satovsky,*
1 B.T.A. 22 (1924) ........................................................... 45

**Cases (continued):** Page(s)

*Schussel v. Commissioner,*
  149 T.C. 363 (2017) ................................................ 10

*Schussel v. Werfel,*
  758 F.3d 82 (1st Cir. 2014) ................................... 36

*Sebelius v. Auburn Reg. Med. Ctr.,*
  568 U.S. 145 (2013) ......................................... 32, 37

*Sexual Minorities Uganda v. Lively,*
  899 F.3d 24 (1st Cir. 2018) .................................. 22

*Smaczniak v. Commissioner,*
  998 F.2d 238 (5th Cir. 1993) ................................ 38

*Stebbins' Est. v. Helvering,*
  121 F.2d 892 (D.C. Cir. 1941) .............................. 28

*Swaim v. Commissioner,*
  417 F.2d 358 (6th Cir. 1969) ............................... 39

*Terrell v. Commissioner,*
  625 F.3d 254 (5th Cir. 2010) ........................... 13, 19

*Thoma v. Commissioner,*
  T.C. Memo. 2020-67 (2020) ................................ 37

*Thomas v. Commissioner,*
  T.C. Memo. 1998-438 (1998) ............................... 19

*Tilden v. Commissioner,*
  846 F.3d 882 (7th Cir. 2017) ........................... 30, 44

*Trimble v. Commissioner,*
  T.C. Memo. 2018-36 (2018) ................................ 37

*Appeal of United Paper Co.,*
  4 B.T.A. 257 (1926) ..................................... 56, 57

*United States v. Brockamp,*
  519 U.S. 347 (1997) ................... 9, 59, 60, 61, 62, 63, 64

*United States v. Clintwood Elkhorn Min. Co.,*
  553 U.S. 1 (2008) ........................................... 64

*United States v. Dalm,*
  494 U.S. 596 (1990) ........................... 35, 48, 60, 64

*United States v. Delgado-Sanchez,*
  849 F.3d 1 (1st Cir. 2017) .................................. 23

*United States v. Josephberg,*
  562, F.3d 478 (2d Cir. 2009) ........................... 51, 54

**Cases (continued):** **Page(s)**

*United States v. Kwai Fun Wong,*
  575 U.S. 402 (2015) ........................................................ 31, 34, 59
*United States v. Rodgers,*
  461 U.S. 677 (1983) ................................................................ 42
*United States v. Williams,*
  514 U.S. 527 (1995) ................................................................ 10
*Valentin v. Hosp. Bella Vista,*
  254 F.3d 358 (1st Cir. 2001) ............................................ 10, 21
*W. W. Windle Co. v. Commissioner,*
  550 F.2d 43 (1st Cir. 1977) .................................................. 26
*Wilkins v. United States,*
  598 U.S. 152 (2025) ................................................................ 35

**Statutes:**

Internal Revenue Code (26 U.S.C.):

  §6211 ................................................................................... 10
  §6212(a) .............................................................................. 11
  §6212(b) ........................................................................ 18, 20
  §6212(b)(1) ..................................................................... 11, 12
  §6212(c)(1) ..................................................................... 40, 62
  §6213(a) ..................................................................... *passim*
  §6512(b) .............................................................................. 63
  §6213(c) ..................................................... 40, 41, 42, 61
  §6213(f)(1) ......................................................................... 46
  §6214(a) ............................................... 35, 36, 37, 38
  §6215(a) .............................................................................. 40
  §6303(a) .............................................................................. 41
  §6330(d)(1) ........................................... 29, 34, 43, 44
  §6331(a) .............................................................................. 41
  §6502 ................................................................................... 41
  §6511 ................................................................... 9, 60, 64
  §6512(a) ............................. 47, 48, 49, 52, 53, 55, 62
  §6512(b)(1) ......................................................................... 38
  §6901(a)(1)(A)(i) ........................................................ 1, 10

**Statutes (continued):** Page(s)

§6901(g) ....................................................................... 11
§7422(e) ....................................................................... 50
§7442 ........................................................................... 26
§7459(d) ..................................... 9, 26, 51, 52, 53, 54, 55, 57
§7481 ........................................... 40, 47, 52, 54, 55
§7482 ....................................... 1, 10, 47, 52, 54, 55
§7483 ............................................................................. 1
§7485(a)(1) ................................................................... 40
§7503 ........................................................................... 44

**Other Statutes:**

8 U.S.C. §1252(a) ......................................................... 33
8 U.S.C. §1252(b)(1) ..................................................... 33
11 U.S.C. §362(a)(8) ..................................................... 46
11 U.S.C. §505(a)(1) ..................................................... 46
28 U.S.C. §1346(a) ....................................................... 64
28 U.S.C. §1346(b)(1) ................................................... 34
28 U.S.C. §2401(b) ....................................................... 34
38 U.S.C. §7252(a) ....................................................... 34
38 U.S.C. §7266(a) ....................................................... 34

Revenue Act of 1926, Pub. L. No. 69-20,
    44 Stat. 9 (1926)............................... 33, 36, 37, 44, 56
Revenue Act of 1928, Pub. L. No. 70-562, 45 Stat. 791 (1928) ......... 49, 56
Internal Revenue Service Restructuring and Reform Act of
    1998, Pub. L. No. 105-206, 112 Stat. 685 (1998) ................ 45, 58, 59

**Treasury Regulations (26 C.F.R.):**

§301.6212-2 ............................................................. 11, 15
§301.6212-2(a)................................... 6, 12, 15, 16, 20
§301.6212-2(b)............................................................ 14
§301.6901-1(a)(1) .......................................................... 1
§301.6903-1(c) ........................................................... 11

**Miscellaneous:** **Page(s)**

H.R. Conf. Rep. No. 105-599 (1998) ............................ 28, 45, 59

H.R. Rep. No. 69-356 (1926) ...................................... 49, 56

H.R. Rep. No. 96-833 (1980) ........................................... 46

S. Rep. No. 69-52 (1926) ............................................ 36, 37

S. Rep. No. 96-1035 (1980) .............................................. 46

Fed. R. App. P. 13(a)(1)(A) ................................................. 1

Tax Ct. R. 123(d) ............................................................. 51

A. Scalia & B. Garner, *Reading Law: The Interpretation of
Legal Texts* 322 (2012) .............................................. 58

United States Tax Court, *Congressional Budget Justification
Fiscal Year 2026* ..................................................... 63

# REASONS WHY ORAL ARGUMENT SHOULD BE HEARD

Counsel for the appellee submit that oral argument would be helpful to allow counsel to explain the complex issues of tax procedure and jurisdiction that are presented in this case.

## JURISDICTIONAL STATEMENT

On August 30, 2022, the IRS sent a notice of transferee liability to Kyick Holdings, LLC ("Holdings") for income taxes owed by transferor Dwight Raymond. (A.75); I.R.C. §6901(a)(1)(A)(i).[1] Transferee liability is subject to the same procedures as the income tax from which it arose. I.R.C. §6901(a)(1)(A)(i); Treas. Reg. §301.6901-1(a)(1). Therefore, Holdings had 90 days from August 30, 2022, or until November 28, 2022, to petition the Tax Court. I.R.C. §6213(a). Holdings filed its petition late, on January 20, 2023. (A.1.) In accordance with precedent (*see* pp. 27-28*, infra*), the Tax Court dismissed the untimely petition for lack of jurisdiction. (Add.7.)

The Tax Court's dismissal order was a final, appealable order that resolved all claims of all parties. (Add.1, 7); *see Commissioner v. Smith Paper, Inc.,* 222 F.2d 126, 129 (1st Cir. 1955). Holdings timely filed a notice of appeal. (A84); I.R.C. §7483; Fed. R. App. P. 13(a)(1)(A). This Court has jurisdiction over the appeal under I.R.C. §7482(a)(1).

---

[1] We cite to Holdings's appendix as "A.," the addendum as "Add.," the opening brief as "Br.," amicus's brief as "Am.Br.," and the Commissioner's addendum as "Aplee.Add."

## STATEMENT OF THE ISSUES

1.     Whether the Tax Court correctly held that the IRS sent the notice of transferee liability to Holdings's last known address, so that the notice of transferee liability was valid.

2.     If the notice of transferee liability was valid, whether the Tax Court correctly dismissed Holdings's petition for lack of jurisdiction because it was untimely.

## STATEMENT OF THE CASE

### A.     Factual background

#### 1.     The IRS's mailing of Holdings's notice to 4 Western Avenue

The IRS determined that taxpayer Dwight Raymond owed income taxes of approximately $700,000 for 2012 through 2019.  (A.78.) According to the IRS, on January 2, 2018, Dwight Raymond and his business entities fraudulently transferred property to Holdings to avoid paying the taxes.  (A.78-79.)

On August 30, 2022, the IRS sent, by certified mail, a notice of transferee liability to Holdings, informing Holdings that it proposed to assess Raymond's taxes against Holdings.  (A.75.)  The notice was addressed to Kylie Raymond, a member of Holdings and Dwight

Raymond's child, and mailed to 4 Western Avenue, Kennebunk, Maine. (A.48, 75.) Several months prior, on about April 17, 2022, Holdings had filed its 2021 income tax return reporting its address as 4 Western Avenue. (A.21-22.) Thus, at the time of mailing, 4 Western Avenue was the address on file with the IRS.[2] (A.23.)

The U.S. Postal Service left notice of the certified mailing on September 1, 2022. (A.18.) When the notice went unclaimed for several weeks, the Postal Service stamped the envelope "Return to Sender/Unclaimed/Unable to Forward/Return to Sender" and returned it to the IRS. (A.18, 73.) The IRS received the returned notice on about October 8, 2022. (A.18, 73.) The time to petition the Tax Court expired on November 28, 2022. I.R.C. §6213(a).

---

[2] As the IRS explained below (A.14), the right-most column of the IRS's address records (A.23) shows the effective date of the change of address, with the first four digits representing the year and the next two digits representing the week in the year. Thus, in the 17th week of 2019, Holdings changed its address to 4 Western Avenue, and did not change it again until the 8th week of 2023. (A.23.) Therefore, when the notice was mailed in August 2022 (A.75), Holdings's address on file with the IRS was 4 Western Avenue.

### 2. The notice of transferee liability to Kyick Charters, LLC

Concurrently, the IRS determined that Dwight Raymond had also fraudulently transferred property to Kyick Charters, LLC ("Charters"). (A.33-34.) On August 30, 2022, it sent a notice of transferee liability to Charters, addressed to Kylie Raymond – the same addressee as Holdings's notice – but at P.O. Box 2664, Kennebunkport, Maine. (A.30, 75.) At that time, Charters had just filed its most recent employer tax return (Form 941) in July 2022, reporting its address as P.O. Box 2664.[3] (A.24-26.)

Charters timely petitioned the Tax Court on November 17, 2022, and, as of the date of this brief, that case remains pending. *Kyick Charters, LLC v. Commissioner,* Tax Ct. No. 25548-22. The attorneys for Charters now also represent Holdings in this case.

---

[3] Holdings cites a statement by its counsel that 4 Western Avenue was "a mailbox nailed to the side of an unoccupied building." (Br.3 (citing A.93-94).) Counsel's unsupported assertions are not evidence, *see I.N.S. v. Phinpathya,* 464 U.S. 183, 188, n.6 (1984), and are in any event irrelevant.

**B.    The Tax Court proceedings**

According to a letter from Holdings's attorneys, they first learned of the notice of transferee liability from an IRS employee on January 5, 2023, and received a copy of the notice from that IRS employee on January 9.  (A.39.)  On January 20, Holdings filed its Tax Court petition.  (A.1.)

### 1.    The IRS's motion to dismiss

The IRS moved to dismiss for lack of jurisdiction, arguing that dismissal was required because the IRS had sent the notice to Holdings's last known address, and Holdings missed the 90-day petition-filing deadline in §6213(a).  (A.11-14.)  Holdings argued that the IRS had failed to exercise reasonable diligence in ascertaining its last known address.  (Aplee.Add.3.)  It asserted that it was seeking "in essence, a declaratory judgment that the IRS assessment is invalid because it failed to send the assessment notice to Holdings at its last known address," and it rejected any supposition that it was challenging the merits of the transferee liability.  (Aplee.Add.2.)

### 2.    The Tax Court opinion

The Tax Court granted the IRS's motion and dismissed the petition for lack of jurisdiction.  Because there was no dispute that

Holdings filed its petition late, the court held that it lacked jurisdiction. (Add.4.) It further held that its dismissal was premised on Holdings's failure to timely file its Tax Court petition, and not the IRS's failure to issue a properly addressed (and therefore valid) notice of transferee liability, because the IRS had mailed the notice to Holdings's last known address under Treas. Reg. §301.6212-2(a): 4 Western Avenue. (Add.4-5.) The court rejected Holdings's argument that the IRS did not use reasonable diligence in ascertaining its mailing address.

## SUMMARY OF ARGUMENT

**1.** The Tax Court correctly held that the IRS mailed the notice of transferee liability to Holdings's its last known address when it mailed the notice to 4 Western Avenue. As Holdings concedes, that address was the address on its most recent tax return. Thus, the IRS complied with Treas. Reg. §6212-2(a). The Tax Court further correctly held that the IRS exercised reasonable diligence in using that address. When it mailed the notice, the IRS had no reason to know that Holdings preferred a different address. While post-mailing circumstances are generally irrelevant to whether the IRS exercised reasonable diligence, the Tax Court was also correct that the "unclaimed" stamp on the

returned notice – unlike an "undeliverable" stamp – did not alert the IRS that 4 Western Avenue was not Holdings's address. Thus, the notice was valid, and Holdings's Tax Court petition was late.

**2.** The Tax Court correctly dismissed the late petition for lack of jurisdiction. It correctly followed its own precedent and appellate case law from this Court and a majority of its sister circuits to conclude that the petition deadline in I.R.C. §6213(a) is jurisdictional, so that a late-filed petition must be dismissed.

On appeal, Holdings asserts for the first time that the petition-filing deadline is not a jurisdictional limitation and that equitable tolling principles should apply. While a court must assure itself at all times that it is not exercising jurisdiction it does not have, this Court has held an argument *in favor* of jurisdiction can be waived. *Mullane v. U.S. Dep't of Just.,* 113 F.4th 123, 137 (1st Cir. 2024). Here, Holdings expressly limited its arguments below to its assertion that the notice of transferee liability was invalid because it was not sent to its last known address. It did not argue that, if the notice were held valid, the petition-filing deadline was non-jurisdictional and could be tolled. Nor did it argue that the requirements for equitable tolling were met.

Indeed, it even expressly waived any challenge to the substance of its liability.  Its waivers make it unnecessary to reach whether equitable tolling should apply.

But if this Court nonetheless reaches whether equitable tolling can apply, it should hold that equitable tolling is not available.  Longstanding precedent establishes that §6213(a)'s petition-filing deadline is a jurisdictional limitation that cannot be tolled.  Moreover, even under recent Supreme Court precedent narrowing what statutory deadlines are jurisdictional, the text, context and history of §6213(a) together make clear statement that §6213(a) grants jurisdiction for the Tax Court to hear a deficiency case and that the filing deadline restricts that jurisdiction.  Section 6213(a)'s express text grants judicial review power to the Tax Court that is intertwined with and limited by the petition-filing deadline.  Other statutes in the statutory scheme governing tax administration only make sense if it is a jurisdictional limitation.  And there is a long history of §6213(a) being understood as jurisdictional.  Indeed, Congress has repeatedly legislated based on that understanding.

Treating the deadline as non-jurisdictional and subject to equitable tolling would not only destabilize a system that demands certainty. It would also seriously prejudice the bulk of taxpayers who file untimely petitions, yet still would not qualify for equitable tolling. Under §7459(d), a non-jurisdictional Tax Court dismissal results in the entry of a decision and order that the deficiency is the amount determined by the Secretary. That decision is res judicata. Thus, a jurisdictional dismissal in fact protects taxpayers who file untimely petitions, because those taxpayers do not forfeit their right to seek relief later through other channels.

Even if §6213(a)'s deadline were non-jurisdictional, Congress intended it to be a mandatory deadline that cannot be tolled. While there is a presumption that non-jurisdictional deadlines may be equitably tolled, §6213(a)'s deadline is like other deadlines that have overcome that presumption. *See United States v. Brockamp*, 519 U.S. 347 (1997) (deadline in I.R.C. §6511 could not be equitably tolled).

# ARGUMENT

## I

### The Tax Court correctly held that the IRS sent the notice of liability to Holdings's last known address

### Standard of review

This Court reviews Tax Court decisions in the same manner as district court judgments in civil actions tried without a jury. I.R.C. §7482(a)(1). Therefore, a dismissal for lack of jurisdiction is reviewed *de novo. Valentin v. Hosp. Bella Vista,* 254 F.3d 358, 365 (1st Cir. 2001). To the extent that underlying facts are in dispute, review is for clear error. *Id.*; *see also Armstrong v. Commissioner,* 15 F.3d 970, 973 (10th Cir. 1994).

————————

Holdings's transferee liability is assessed in the same manner and subject to the same provisions and limitations as the income tax owed by Dwight Raymond. (A. 78-79); I.R.C. §6901(a)(1)(A)(i). Therefore, Holdings's notice of liability is subject to the deficiency procedures that are applicable to the income tax, I.R.C. §§6211 *et seq. See United States v. Williams,* 514 U.S. 527, 539 (1995); *Schussel v. Commissioner*, 149 T.C. 363, 368 (2017) (citing cases). Under those provisions, when the

IRS determines a transferee liability, it must send Holdings a notice of the liability to its last known address and allow Holdings 90 days to petition the Tax Court, before it can assess the liability. I.R.C. §§6212(a), 6213(a); *In re Maali,* 432 B.R. 348, 352 (B.A.P. 1st Cir. 2010).

The present dispute centers on whether the IRS sent the notice to Holdings's "last known address." I.R.C. §6212(b)(1). If the notice was sent to Holdings's last known address, it is valid, and Holdings's petition is untimely. *Mulder v. Commissioner,* 855 F.2d 208, 210-11 (5th Cir. 1988). But if the notice was not sent to the last known address, it is invalid. *Gyorgy v. Commissioner,* 779 F.3d 466, 476 (7th Cir. 2015). And if the limitations period for assessment has expired, the IRS may be unable to collect. *Id.*

## A.  The IRS sent Holdings's notice to Holdings's last known address

A notice of transferee liability "shall, if mailed to the person subject to this liability at his last known address, be sufficient." I.R.C. §6901(g). Treas. Reg. §301.6903-1(c) incorporates, for transferee liability notices, the definition of "last known address" in Treas. Reg. §301.6212-2. Courts have uniformly held that actual receipt is not required for a §6212 or §6901 notice to be valid, if the notice was sent to

the taxpayer's last known address. *See, e.g., Borgman v. Commissioner,* 888 F.2d 916, 197 (1st Cir. 1989) (calling §6212(b)(1) a "safe harbor" for IRS, even if taxpayer does not receive actual notice); *Niemela v. United States,* 995 F.2d 1061 (Table), 1993 WL 198171, at *2, n.3 (1st Cir. 1993) (citing cases); *Morse v. I.R.S.,* 635 F.2d 701, 702-03 (8th Cir. 1980). With an exception not relevant here, "a taxpayer's last known address is the address that appears on the taxpayer's most recently filed and properly processed Federal tax return, unless the Internal Revenue Service is given clear and concise notification of a different address." Treas. Reg. §301.6212-2(a).

Holdings concedes that the address the IRS used "met the statutory and regulatory requirements because the address appeared on the last return filed by Holdings, and that Holdings did not otherwise provide a 'clear and concise notification' to the IRS of a different address." (Br.5; *see* Add.4-5.) Indeed, at the time the IRS mailed the notice to 4 Western Avenue on August 30, 2022, Holdings had filed its most recent income tax return, in April 2022, using that address. (Add.2, 5; A.21-22, 75.) The IRS therefore sent the notice to Holdings's last known address, as defined by Treas. Reg. §301.6212-2(a).

## B. The IRS exercised reasonable diligence in ascertaining Holdings's last known address

Unable to dispute that the IRS complied with the regulatory requirements, Holdings instead argues that the IRS failed to exercise "reasonable diligence" in ascertaining its last known address. Holdings argues the IRS knew or should have known to send the notice to P.O. Box 2664 because it sent Charters's notice to that address, the IRS had notice of that P.O. Box address for Holdings from property records, and the Holdings notice was returned as unclaimed. (Br.8-12.) The Tax Court correctly rejected those arguments. (Add.6.)

The IRS is required to use reasonable diligence to determine a taxpayer's last known address. *Gyorgy,* 779 F.3d at 478. Whether the IRS used reasonable diligence depends on the circumstances of each case, and the taxpayer bears the burden of showing that the IRS failed to use such diligence. *Terrell v. Commissioner,* 625 F.3d 254, 259 (5th Cir. 2010); *Armstrong,* 15 F.3d at 974. The focus is on the information that the IRS had at the time it mailed the notice. *Terrell,* 625 F.3d at 259; *Follum v. Commissioner,* 128 F.3d 118, 119–20 (2d Cir. 1997).

Here, the IRS exercised reasonable diligence in mailing the Holdings notice to 4 Western Avenue, the address Holdings concedes

(Br.5) was on its last-filed return. The IRS is entitled "to rely on documents submitted by the taxpayer." *Gyorgy,* 779 F.3d at 476; *see also Armstrong,* 15 F.3d at 974. Indeed, "the IRS would run a risk in relying on address information about a taxpayer submitted by a third party." *Gyorgy,* 779 F.3d at 476 (quoting *Gille v. United States,* 33 F.3d 46, 48 (10th Cir. 1994)) (cleaned up). Treas. Reg. §301.6212-2(b) concurs: "Except [as provided to the United States Postal Service], change of address information that a taxpayer provides to a third party, such as a payor or another government agency, is not clear and concise notification of a different address for purposes of determining a last known address."

Holdings urges (Br.12) that, because the IRS knew that Holdings and Charters were affiliated and the IRS sent the Charters notice to P.O. Box 2664, the IRS should have sent the Holdings notice to that P.O. Box too. But Holdings offers no evidence that the IRS knew or should have known, when it mailed the notices, that one address was better than the other and, if so, which was better. It does not matter that the IRS knew that the two entities shared the same owners, had engaged in the same transaction with Dwight Raymond, and that

Holdings had used the P.O. Box address on property records. (Br.12; A.55, 58.) At the time of mailing, it had no reason to know that Holdings preferred the P.O. Box address over the address on its last-filed return. In fact, Holdings's logic leads equally to the conclusion that the IRS should have sent Charters's notice to the Western Avenue address. Had that occurred, Charters would be crying foul.[4] As the Seventh Circuit has said: "These were only *possible,* not *known,* addresses; if [the taxpayer] wanted the IRS to use one of them, it was his responsibility to inform it which address was correct." *Gyorgy,* 779 F.3d at 477 (citations omitted); *see also Armstrong,* 15 F.3d at 974 (taxpayer never informed the IRS that he intended one address to replace all others); *Marks v. Commissioner,* 947 F.2d 983, 986 (D.C. Cir. 1991) (IRS "had no duty to send duplicate notices to every single address of which [it] had knowledge").

A closer examination of the documents obtained in the IRS investigation shows why Treas. Reg. §301.6212-2 and the courts require

---

[4] Conversely, if the IRS had sent Holdings's notice to P.O. Box 2664—and not the Western Avenue address reported on Holdings' own last-filed return, as Treas. Reg. §6212-2(a) directs—it would have opened the door to a stronger argument that the notice was invalid.

"clear and concise notification," as defined by the regulation and the operative revenue procedure, if a taxpayer wants the IRS to use a different address than the address on its most recent return. The property records, which show a P.O. Box address for Holdings, were printed in April 2021, over a year before the IRS mailed the notice and approximately a year before Holdings reported the Western Avenue address on its latest return. (A.55, 58.) The asset purchase agreement is dated January 2, 2018, over four years before mailing of the notice, and lists yet another address, "P.O. Box 2663," for Holdings's and Charters's owners—an address that reflected a typographical error. (A.48, 67-68; Aplee.Add.6.) The IRS's investigative report, prepared in September 2021, also lists a New Hampshire address for both Charters and Holdings. (Br.11; A.43, 46).

None of those documents constitutes an instruction from Holdings to the IRS that Holdings preferred the P.O. Box 2664 address. And given that all those documents predate the tax return that Holdings filed immediately before notice of liability bearing the Western Avenue address (A.21), the IRS was prudent and correct to send the notice to Western Avenue in accordance with Treas. Reg. §6212-2(a). *See*

*Follum,* 128 F.3d at 120 ("if the IRS has been given no reason to believe that the address shown on the taxpayer's last filed income tax return is no longer current, the mailing of a notice of deficiency to that address is proper").

The circumstances here are a far cry from those in which courts have required greater diligence. In *Gregory v. Commissioner,* 839 F. App'x 745 (3d Cir. 2020), the IRS had actual notice of the taxpayers' new address because their accountant had told the IRS agent of the new address, and taxpayers had submitted to the IRS two prior forms that contained the new address. 839 F. App'x at 746-48. In *Mulder*, two letters to the taxpayer had been returned to the IRS before the mailing of the notice of deficiency, both stamped: "Moved, left no address." 855 F.2d at 210. No similar circumstance was present here when Holdings's notice was mailed. Rather, the most recent and direct instruction from Holdings as to its last known address was its recent tax return, reporting the 4 Western Avenue address. (A.21.)

Holdings is wrong that return of the notice as "unclaimed" in October 2022 should have prompted the IRS to search for another address. (Br.9.) "That argument fails … because the last-known-

address inquiry focuses on the information the IRS possessed at the time of mailing." *Gyorgy,* 779 F.3d at 477. "Nothing in [§6212(b)] suggests that the IRS is obligated to take additional steps to effectuate delivery if the notice is returned." *King v. Commissioner,* 857 F.2d 676, 681 (9th Cir. 1988). Section 6212(b) "requires only that the IRS mail a notice of deficiency to the taxpayer's last home address, not that the taxpayer actually receive it." *Niemela,* 1993 WL 198171, at *2 n.3 (citing cases); *Kaebel v. Commissioner*, 770 F. App'x 726, 726 (5th Cir. 2019) (noting that proper mailing "shall be sufficient" under §6212(b)); *Grillo v. Commissioner,* 566 F. App'x 58, 59 (2d Cir. 2014) (taxpayers' notification of change of address after mailing was ineffective); *Armstrong,* 15 F.3d at 975 ("IRS's duty to exercise reasonable diligence in ascertaining a taxpayer's last known address extends only to the point in time when the deficiency notice is mailed").

In any event, the Holdings's notice was returned to the IRS on about October 8, 2022, stamped "Return to Sender/Unclaimed/Unable to Forward." (A.18, 73.) As the Tax Court correctly observed, there is a difference between "unclaimed" and "undeliverable," and "the IRS was justified in believing that a notice of deficiency was mailed to the correct

address and that [Holdings] simply failed to claim the notice." (Add.6 & n.2); *Armstrong,* 15 F.3d at 975 (noting difference between "undeliverable" and "unclaimed"); *Guthrie v. Sawyer,* 970 F.2d 733, 737 (10th Cir. 1992) ("unclaimed" stamp defeats taxpayer's claim that notice was not sent to last known address); *Thomas v. Commissioner,* T.C. Memo. 1998-438, 1998 WL 866633, at *3 (1998), *aff'd,* 194 F.3d 1305, (Table) 1999 WL 790686 (4th Cir. 1999) ("unclaimed" stamp indicates that certified mail notices were left at address, yet mail was unclaimed). In contrast, where courts have required post-mailing efforts from the IRS due to returned notices, the notices were returned as "undeliverable" or "moved," and additional pre-mailing circumstances showed that the IRS should have known of a different address at the time of mailing. *See, e.g., Terrell,* 625 F.3d at 257, 260; *Mulder,* 855 F.2d at 210, 211–12.

Nor does the January 2023 conversation between the IRS employee and Charters's counsel (now also Holdings's counsel) show that the IRS should have known to send Holdings's notice to Charters's last known address. (Br.9-11.) The IRS's knowledge of a "close connection" between Charters and Holdings (Br.10) does not change the

fact that they are two separate entities, filed separate returns, and gave different addresses on their respective most-recently-filed returns shortly before the August 30, 2022, notices of liability (A.21-22, 24-25). It was not the IRS's obligation to question why Charters filed a Tax Court petition, while Holdings did not, or whether Holdings's failure to pick up its notice was a mistake or a deliberate decision. (Br.10); *see Gyorgy,* 779 F.3d at 480.[5] If anything, it was Kylie Raymond, the person named on both the Charters notice and Holdings notice (A.30, 73), who should have questioned why she had received a notice for Charters but none for Holdings (and accordingly checked the Western Avenue mailbox)—given that the Charters notice described the basis of the liability as a transaction in which Holdings also participated in a similar capacity. (A.33-34, 67.)

In sum, when the IRS mailed Holdings's notice, it complied with I.R.C. §6212(b) and Treas. Reg. §301.6212-2(a) and used reasonable

---

[5] The letter documenting the January 2023 conversation contains only a characterization of the conversation from the viewpoint of Holdings's counsel (then only Charters' counsel). (A.39.) While it can be read to mean that the IRS employee called counsel specifically to discuss the Holdings notice, it also leaves open the possibility that *counsel* brought Holdings in a conversation that was otherwise about Charters and invited the IRS employee to respond.

diligence in ascertaining Holdings's last known address. The Tax Court thus correctly held that the notice is valid. (Add.7.) Consistent with precedent, the Tax Court correctly dismissed Holdings's late-filed petition for lack of jurisdiction. *See, e.g., Ferre v. Commissioner*, 718 F.2d 6 (1st Cir. 1983); *Hallmark Rsch. Collective v. Commissioner,* 159 T.C. 126 (2022).

## II

### The Tax Court correctly dismissed Holdings's untimely petition

#### Standard of review

The standard of review of a dismissal for lack of jurisdiction is *de novo*. *Valentin,* 254 F.3d at 365; *see also Drake v. Commissioner,* 511 F.3d 65, 68 (1st Cir. 2007). Whether a statute permits equitable tolling is also reviewed *de novo*. *Neverson v. Farquharson,* 366 F.3d 32, 39 (1st Cir. 2004).

### A. Holdings's waivers make it unnecessary to delve into its equitable tolling argument

On appeal, Holdings argues for the first time that, even if the notice of transferee liability was sent to its last known address and was thus valid, the Tax Court erred in dismissing the case for lack of

jurisdiction because the 90-day time limit in I.R.C. §6213(a) is non-jurisdictional and can be equitably tolled.  (Br.13.)

Generally, arguments not raised in the trial court are waived. *Igartua v. United States*, 626 F.3d 592, 603 (1st Cir. 2010).  While objections to subject matter jurisdiction may be raised at any time, an argument *in favor* of jurisdiction can be waived.  *Mullane,* 113 F.4th at 137 (citing *Merrell Dow Pharms., Inc. v. Thompson,* 478 U.S. 804, 809 n.6 (1986) ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced.")); *see also Sexual Minorities Uganda v. Lively,* 899 F.3d 24, 34 (1st Cir. 2018) ("a federal court is not required to assume jurisdiction under a theory that a party has waived.").

In the Tax Court, Holdings waived the contention its now urges (Br.13): that §6213(a)'s deadline is a non-jurisdictional claims-processing rule, so that missing the deadline does not deprive the Tax Court of jurisdiction and equitable tolling is available.  Nor did Holdings argue it met the high standards for tolling.

In the Tax Court, Holdings expressly rejected the Commissioner's suggestion that its petition sought anything other than a determination "that the IRS assessment [was] invalid" because the notice was not sent

to Holdings at its last known address. Holdings expressly rejected the "notion that Holdings is challenging the substantive assessment by the IRS regarding transferee liability." (Aplee.Add.2.) Only in a footnote did Holdings note that "[e]ven if the Petition were challenging the substance of the assessment," the Tax Court would have jurisdiction over its petition. (*Id.* at 2 n.2 (citing *Culp v. Commissioner*, 75 F.4th 196 (3d Cir. 2023)). That one sentence in a footnote was insufficient to preserve Holdings's new arguments on appeal that §6213(a)'s petition-filing deadline is non-jurisdictional and can be tolled, or that equitable tolling should apply. *See Perfect Puppy, Inc. v. City of E. Providence, R.I.*, 807 F.3d 415, 418 (1st Cir. 2015) ("perfunctory" treatment in a single sentence comment is insufficient to preserve an argument).[6] Nor can an amicus revive arguments that Holdings waived. *Gonzalez-Droz v. Gonzalez-Colon*, 660 F.3d 1, 12 (1st Cir. 2011) (observing that an "amicus cannot introduce a new argument into a case" and declining to

---

[6] Holdings's citation of *Culp* confirms that it was aware that Third Circuit had recently held §6213(a)'s deadline is non-jurisdictional and tollable. Having been thus aware, Holdings's failure to raise that argument below should not now be excused. *See United States v. Delgado-Sanchez,* 849 F.3d 1, 6-7 (1st Cir. 2017).

address argument not raised below) (citations omitted). Accordingly, this Court can and should affirm the Tax Court's dismissal for lack of jurisdiction without further analysis.

Even if the Court reaches Holdings's waived argument that §6213(a) is non-jurisdictional and is furthermore subject to equitable tolling, and decides it entirely in Holdings's favor, remand would effectively result in an order for the Tax Court to engage in an academic exercise.[7] *See NLRB v. Wyman-Gordon Co.,* 394 U.S. 759, 766-67 n.6 (1969) (declining to remand where it would be "an idle and useless

---

[7] This Court should deny Holdings's request (Br.25) that this Court rule in the first instance that it is entitled to equitable tolling, even if the Court holds that §6213(a) is non-jurisdictional and is subject to equitable tolling. As explained *supra* at pp. 21-26, Holdings has waived the tolling argument by expressly waiving it below. But even in absence of a waiver, the appellate courts that have ruled tolling could be available have all remanded for the fact-based inquiry into whether tolling should be available in the particular case. *See, e.g., Culp,* 75 F.4th at 205.

Even assuming that tolling is available, the facts here—showing Holdings's failure to notify the IRS of its preferred address or make inquiries after Charters received a notice of transferee liability—fall short of Holdings's heavy burden for tolling, which requires showing it pursued its rights diligently but some extraordinary circumstance prevented it from bringing a timely action. *Neverson,* 366 F.3d at 41-42 (equitable tolling should be invoked "sparingly"; it is not available to rescue a litigant from his own lack of due diligence.")

formality"). This Court would only reach the question whether §6213(a) is subject to equitable tolling if it affirms the Tax Court's ruling that the IRS sent the notice of liability to the last known address. Because the Tax Court has already found that the IRS exercised reasonable diligence in sending the notice of liability to Holdings's last known address, it is extremely unlikely that, on those same facts, Holdings could satisfy the demanding burden of showing that it had pursued his rights diligently, but that some "extraordinary circumstance" prevented its timely filing. *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005). In particular, the late receipt of mail has been held to be a "garden variety claim of excusable neglect" that does not justify equitable tolling. *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990).

Moreover, even if this Court resolves the §6213(a) questions in Holdings's favor, the end-result should be a decision on the merits for the Commissioner. Holdings already has abandoned any challenge on the merits. (Aplee.Add.2 & n.1.) Thus, if the validity of the notice of liability is affirmed, all the Tax Court may do is enter a decision for the amount of the tax as determined by the Commissioner. Further, in the likely event that Holdings fails to meet the high bar for equitable

tolling, the Tax Court is also commanded by I.R.C. §7459(d) to do the same. *See* pp. 51-55, *infra.*

## B. Section 6213(a)'s 90-day deadline is a jurisdictional limitation and as such cannot be tolled

If this Court nonetheless addresses Holdings's arguments that §6213(a)'s deadline is non-jurisdictional and can be tolled, it should follow the longstanding precedent holding that §6213(a)'s deadline is jurisdictional and as such cannot be tolled.

### 1. Longstanding precedent holds that §6213(a)'s deadline is jurisdictional

"The Tax Court is a court of limited jurisdiction and lacks general equitable powers." *Commissioner v. McCoy,* 484 U.S. 3, 7 (1987). Congress has provided generally that "[t]he Tax Court and its divisions shall have such jurisdiction as is conferred on them" by the Tax Code. I.R.C. §7442.

The Tax Court's specific jurisdiction to redetermine deficiencies comes from §6213(a). *See Hallmark,* 159 T.C. at 137-41; *accord Baral v. United States,* 528 U.S. 431, 439 n.2 (2000); *see also Hansen v. Commissioner,* 201 F.3d 427, 1998 WL 1247113, at *1 (1st Cir. 1998) (unpublished); *W. W. Windle Co. v. Commissioner,* 550 F.2d 43, 45 (1st

Cir. 1977). Section 6213(a), set forth in full in Holdings's Addendum, p. 11, provides in its first sentence: "Within 90 days … after the notice of deficiency authorized in section 6212 is mailed …, the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency."

For a century, courts uniformly have held that the 90-day deadline for filing a Tax Court petition limits the Tax Court's jurisdiction to redetermine a deficiency. *See Hallmark,* 159 T.C. at 155-161 (citing cases). This Court likewise has so held. *Ferre*, 718 F.2d 6; *Hansen,* 1998 WL 1247113, at *1; *Athens Pizza of Jaffrey, Inc. v. Commissioner,* 134 F.3d 361 (Table), 1998 WL 42182, at *1 (1st Cir. 1998) (unpublished).[8] Against that backdrop, Congress repeatedly legislated on the understanding that §6213(a)'s filing deadline was

---

[8] Where the notice of deficiency was not sent to the last known address, a few isolated courts have not purported to employ equitable tolling, but expanded the time to file a petition by holding that the 90-day deadline began to run when the notice was received (which given the situation was the first date proper mailing could be proved). *See, e.g., Gaw v. Commissioner,* 45 F.3d 461 (D.C. Cir. 1995), *nonacquies., 1996-10 I.R.B. 4* (March 4, 1996). We submit that such an adjustment, which the statute does not contemplate, is not permissible, as indicated by our nonacquiescence in *Gaw.* But, here, where a valid notice of deficiency was timely sent to Holdings last known address, those cases are inapplicable in any event.

jurisdictional. *See, e.g.*, H.R. Conf. Rep. No. 105-599, at 289 (1998) (under "Present Law," if a "petition is not filed within [§6213(a)'s] time period, the Tax Court does not have *jurisdiction* to consider the petition" (emphasis added)).

The Supreme Court has never directly addressed whether §6213(a)'s deadline is jurisdictional—likely because the circuits have been unanimous in their construction of the statute from its earliest days. As the D.C. Circuit stated in 1941, "it has been decided time and again that the statutory period is jurisdictional, and the duty to dismiss on failure to comply is mandatory." *Stebbins' Est. v. Helvering*, 121 F.2d 892, 893-94 (D.C. Cir. 1941). But the Court has repeatedly suggested that meeting §6213(a)'s requirements is a prerequisite to Tax Court jurisdiction. *See Laing v. United States,* 423 U.S. 161, 166, n.4 (1976) (issuance of valid notice of deficiency is a prerequisite to deficiency jurisdiction); *U.S. ex rel. Girard Tr. Co. v. Helvering,* 301 U.S. 540, 542 (1937) (prerequisite to Tax Court deficiency jurisdiction is that taxpayer must file a petition with that Court).

These requirements for the Tax Court's exercise of deficiency jurisdiction come from §6213(a)'s first sentence, just as the 90-day

deadline does.  Thus, Supreme Court's guidance addressing the Tax Court's deficiency jurisdiction is consistent with the century of precedent holding that §6213(a) confers jurisdiction only if the requirements set forth therein—including the petition-filing deadline—are met.

In 2023, *Culp v. Commissioner*, 75 F.4th 196, shattered decades of consistent precedent and held the 90-day limit is a non-jurisdictional claims-processing rule.  In *Culp,* the Third Circuit looked to the Supreme Court's recent efforts to bring discipline to use of the jurisdictional label—a shift that accelerated after *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006), and extended to the tax context in *Boechler P.C. v. Commissioner,* 596 U.S. 199, 203 (2022), where the Court held that the Tax Court filing deadline for a collection-due-process case in I.R.C. §6330(d)(1) was non-jurisdictional.  The *Culp* court concluded that those developments warranted departing from prior precedent to hold that §6213(a)'s petition-filing deadline is not jurisdictional.  The Second and Sixth Circuit's recently followed *Culp*.  *Buller v. Commissioner*, No. 24-1557, ___ F.4th ___, 2025 WL 2348969

(2d Cir. Aug. 14, 2025); *Oquendo v. Commissioner,* 148 F.4th 820 (6th Cir. 2025).

But even after the Supreme Court's revised approach to describing what is jurisdictional, three circuits—the Seventh, Ninth, and Eleventh —have continued to hold that that §6213(a)'s petition-filing deadline *is* jurisdictional.  *See Organic Cannabis Found., LLC v. Commissioner,* 962 F.3d 1082, 1093 (9th Cir. 2020); *Tilden v. Commissioner*, 846 F.3d 882 (7th Cir. 2017); *Allen v. Commissioner*, No. 22-12537, 2022 WL 17825934 (11th Cir. Dec. 21, 2022); s*ee also Atighi v. Commissioner*, No. 21-71417, 2022 WL 17223046 (9th Cir. Nov. 25, 2022) (unpublished, but still applying prior precedent after *Boechler*).  Should this Court reach the issue, it should join those circuits and continue to hold that §6213(a)'s petition-filing deadline is jurisdictional.  That result offers the best reading of the statutory text; still comports with the Supreme Court's modern approach to jurisdiction; and is the only approach that keeps an intricate statutory scheme functioning as intended.

### 2. Text, context, and historical treatment make a clear statement that the 90-day deadline is jurisdictional

Under the Supreme Court's modern approach to evaluating whether a deadline is jurisdictional, courts must now inquire "whether

Congress has clearly stated that a rule is jurisdictional." *Boechler*, 596 U.S. at 204. But "Congress need not incant magic words" to make a statutory condition jurisdictional, and the absence of the word "jurisdiction" is not necessarily dispositive. *Id.* at 203 (internal quotation marks and citation omitted); *Organic Cannabis,* 962 F.3d at 1093 (citing *Sebelius v. Auburn Reg. Med. Ctr.,* 568 U.S. 145, 153 (2013)). Ultimately, the question is whether there is a sufficiently "clear indication that Congress wanted the rule to be jurisdictional." *Henderson ex rel. Henderson v. Shinseki,* 562 U.S. 428, 435-36 (2011) (internal quotation marks and citation omitted).

While this inquiry begins with the text, it does not end there. *See Boechler,* 596 U.S. at 204. Courts must also consider the rule's "broader statutory context," *id.* at 206, and its "relevant historical treatment." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010) ("looking to … text, context, and relevant history treatment"); *see also MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 300, 302 (2023) (looking to "statutory context" and for "contextual clues"); *United States v. Kwai Fun Wong*, 575 U.S. 402, 410-12 (2015) (considering "legislative history"). And while "'most time bars'" fall short of the jurisdictional

threshold, *Harrow v. Dep't of Def.*, 601 U.S. 480, 484 (2024) (quoting *Wong*, 575 U.S. at 410), some overcome it. Section 6213(a) falls on the jurisdictional side of the line.

> **a.** **The text: Congress put the jurisdictional grant and the petition deadline in the same sentence and inextricably bound them**

**1.** Congress put the 90-day petition deadline in the same first sentence of §6213(a) that grants the Tax Court deficiency jurisdiction. *See supra* pp. 27-29. That sentence grants both the Tax Court power to "redetermin[e] … the deficiency" and the taxpayer's right to petition the Tax Court for that relief, both of which are linked to a timely petition. While proximity alone may not carry the day, *see Auburn*, 568 U.S. at 155, this textual overlay is evidence that Congress intended the deadline to have jurisdictional effect. *See Henderson*, 562 U.S. at 439-40 ("placement" can "provide some indication of Congress' intent").

The jurisdictional grant in §6213(a)'s first sentence admittedly does not use the word "jurisdiction." But it does state that, if a timely petition is filed, the Tax Court then is authorized to "redetermin[e] … the deficiency." In other contexts, courts have held that provisions granting the power of judicial review are jurisdictional provisions, even

where the word "jurisdiction" is not used. *See, e.g. Monsalvo v. Bondi*, 604 U.S. ___, 145 S. Ct. 1232, 1239 (2025) (indicating that 8 U.S.C. §1252(a), which allows a petition for "[j]udicial review of a final order of removal" granted "statutory jurisdiction," despite not using the word jurisdiction);[9] *Madrigal v. Holder*, 572 F.3d 239, 242 (6th Cir. 2009) (8 U.S.C. §1252(a)(1) is "an implicit jurisdictional grant"). Here, too, §6213(a)'s statutory grant of authority to redetermine (*i.e.*, review) a deficiency confers jurisdiction but combines that grant with the petition-filing deadline.

Congress has granted the Tax Court deficiency jurisdiction in the same way since 1926. *See* 1926 Act, §274(a), 44 Stat. 9, 55 ("[w]ithin 60 days after [the notice] is mailed … the taxpayer may file a petition with the Board of Tax Appeals for a redetermination of the deficiency"). Thus, from the beginning, the cause of action, the jurisdictional grant, and the limiting deadline were fused in the same sentence, as they remain today. Because §6213(a)'s jurisdictional grant is intertwined with the filing deadline, it is unlike cases where the Supreme Court

---

[9] A time limit in a separate subsection (8 U.S.C. §1252(b)(1)) is non-jurisdictional. *Riley v. Bondi*, 145 S. Ct. 2190 (June 26, 2025). *See infra* p. 29.

held a deadline is a claims-processing rule because the deadline is separated from the jurisdictional grant. (Am.Br.20-21.) *See, e.g., Wong,* 575 U.S. at 411-12 (2015) (jurisdictional grant in 28 U.S.C. §1346(b)(1), time limit in 28 U.S.C. §2401(b)); *Henderson,* 562 U.S. at 431-32, 439 (jurisdictional grant in 38 U.S.C. §7252(a), filing deadline in 38 U.S.C. §7266(a)).

Section 6213(a) also textually differs from the filing deadline in *Boechler*. (Br.16-18.) That time limit—which restricts post-assessment collection review in Tax Court, I.R.C. §6330(d)(1)—is severed from the statute's "jurisdictional language" that appears in a "parenthetical at the end of the sentence." 596 U.S. at 204; *see also id.* at 205-06 (repeatedly emphasizing the significance of the "parenthetical"). Here, the link is not severed: The taxpayer's cause of action and the jurisdictional grant overlap, and the deadline governs both.

In creating the cause of action, §6213(a) also waives sovereign immunity to allow the Tax Court case to proceed, and the petition-filing deadline stands as a limit on that grant of jurisdiction. To hold otherwise ignores the other longstanding clear-statement rule: the rule that waivers of sovereign immunity that, like §6213(a), allows the

Commissioner to be sued, "must be unequivocally expressed in statutory text" and "strictly construed, in terms of [their] scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996); *see also Miller v. United States*, 604 U.S. \_\_, 145 S. Ct. 839, 852 (2025). While this sovereign immunity rule may not insulate §6213(a) from the jurisdictional clear-statement rule, *see Wilkins v. United States*, 598 U.S. 152, 158 n.3 (2025), this Court should still resist any reading of §6213(a) that would enlarge the waiver in a way not expressly authorized. *See, e.g.*, *United States v. Dalm*, 494 U.S. 596, 608 (1990).

**2.** Amicus's attempts to get around the fact that §6213(a) deadline is intertwined with the grant of deficiency jurisdiction, by pointing to other statutes as the source of deficiency jurisdiction, are misconceived.

Deficiency jurisdiction is not granted by I.R.C. §6214(a), as amicus suggests. (Am.Br.17-21.) Section 6214(a), entitled "Jurisdiction as to *increase* of deficiency, *additional amounts*, or additions to the tax," generally gives the Tax Court "jurisdiction to redetermine the correct amount of the deficiency even if the amount so redetermined *is greater* than the amount of the deficiency" stated in the notice of deficiency, but

only if a "claim therefor is asserted by the Secretary at or before the hearing or rehearing." I.R.C. §6214(a) (emphasis added). Section 6214(a)'s contemplation of a *greater* amount than is asserted in the notice of deficiency makes plain that it is an expansion of the Tax Court's existing jurisdiction over a redetermination of the original amount.[10]

The Supreme Court has confirmed this reading of §6214(a). In *Old Colony Tr. Co. v. Commissioner,* 279 U.S. 716 (1929), the Court explained that §6214(a)'s predecessor—§274(e) of the Revenue Act of 1926, 44 Stat. 9 ("1926 Act")—"*enlarged the original jurisdiction* of the Board of Tax Appeals to consider deficiencies beyond those shown in the Commissioner's notice." 279 U.S. at 722 (emphasis added); *see also* S. Rep. No. 69-52, at 27-28 (1926) (same); *accord Schussel v. Werfel,* 758 F.3d 82, 95 (1st Cir. 2014) (citing §6214 as "granting the tax court jurisdiction to determine *increases* in deficiencies") (emphasis added).

The Tax Court has concurred. *Hallmark*, 159 T.C. at 165. Although amicus cites three cases in which the Tax Court cited §6214(a)

---

[10] "Section headings supply cues as to what Congress intended." *Rudisill v. McDonough,* 601 U.S. 294, 309 (2024) (cleaned up).

as the basis for its original—as opposed to expanded—deficiency jurisdiction (Am.Br.20), none grappled with the statutory text. Moreover, the judges who issued those pre-*Hallmark* opinions have since joined the majority *Hallmark* opinion rejecting §6214(a) as the source of deficiency jurisdiction. *Compare Hallmark,* 159 T.C. at 164-67 (joined by Paris & Morrison, JJ) *with Thoma v. Commissioner,* T.C. Memo. 2020-67, at [*5] (2020) (Morrison, J.); *Trimble v. Commissioner,* T.C. Memo. 2018-36, at [*5] (2018) (Paris, J.); *Moyer v. Commissioner,* T.C. Memo. 2016-236, at [*2] (2016) (Morrison, J.).

Amicus further points out that Congress, in the 1926 Act, expressly added the word "jurisdiction" to §6214(a)'s predecessor and did not do so in §6213(a)'s predecessor. (Am.Br.18-19.) Not only does that argument fall into the trap of requiring "magic words," *Auburn,* 568 U.S. at 153, but it also overlooks legislative history in which Congress explained its reasoning for §6214(a)'s predecessor: "to avoid the necessity of sending out a *second* notice to the taxpayer … it is provided in section 274(e) that the board shall have jurisdiction upon the appeal from the *original* deficiency letter" to redetermine additional amounts. S. Rep. No. 69-52, at 27-28 (emphasis added). In other words,

Congress already thought it was clear that the Board of Tax Appeals had jurisdiction over a petition challenging the deficiency proposed in the original notice; its concern was avoiding a second notice. Both *Old Colony* and *Hallmark,* a century apart, read §6214(a) (or its predecessor) as an expansion of jurisdiction that had been conferred elsewhere. *Old Colony,* 279 U.S. at 722; *Hallmark*, 159 T.C. at 163-65.[11]

---

[11] Amicus's suggestion (Am.Br.18-19) that §6214(b) or §6512(b)(1) is the source of deficiency jurisdiction is even farther afield. Section 6512(b) grants jurisdiction only for the Tax Court to determine an overpayment, *i.e.,* in cases where "the Tax Court finds that there is no deficiency and further finds that the taxpayer has made an overpayment of income tax [or certain other taxes] for the same taxable year." I.R.C. §6512(b)(1). Its phrase "*if* the Tax Court finds that there is no deficiency and further finds … an overpayment," necessarily presumes that the Tax Court has already acquired deficiency jurisdiction elsewhere—*i.e.,* under §6213(a). *See Est. of Smith v. Commissioner,* 429 F.3d 533, 537 (5th Cir. 2005) (citing §§6211 and 6213 as basis for deficiency jurisdiction and §6512(b) as basis for overpayment jurisdiction); *Est. of Branson v. Commissioner,* 264 F.3d 904, 910, 913 (9th Cir. 2001) (§6512(b) gives Tax Court jurisdiction to determine overpayment "where the jurisdiction of the Tax Court is properly invoked" under §6213).

Section 6214(b)(2) similarly assumes the Tax Court already has jurisdiction under another statute to redetermine a deficiency for certain tax periods. Its purpose is to bar the Tax Court from determining the tax for other periods, while clarifying that "facts with relation to the taxes for other [periods]" may be considered for the purpose of determining the tax for the periods for which the court does have jurisdiction. *See, e.g., Smaczniak v. Commissioner,* 998 F.2d 238,

(continued…)

### b. Context: §6213(a)'s unique role in our scheme of administrative collection shows that the deadline limits the Tax Court's power

The second pillar of the clear-statement rule is context. No matter how precise the language used, "the true meaning of a single section of a statute in a setting as complex as that of the revenue acts … cannot be ascertained" without also examining "related sections" and "the history of the income tax legislation of which it is an integral part." *Commissioner v. Engle*, 464 U.S. 206, 223 (1984) (internal quotation marks omitted).

Not only does a holistic reading of §6213 itself reinforces the jurisdictional nature of the 90-day deadline, *see Hibbs v. Winn*, 542 U.S. 88, 101 (2004), but the constellation of related tax statutes confirms Congress intended it to be jurisdictional.

---

243 (5th Cir. 1993); *Swaim v. Commissioner,* 417 F.2d 358, 360-61 (6th Cir. 1969) (citing *Commissioner v. Gooch Milling & Elevator Co.,* 320 U.S. 418 (1943)).

### (i) Section 6213(c) and the shift to the assessment-and-collection phase if no timely petition is filed

Section 6213(a)'s deadline is a tipping point in tax disputes.  When the taxpayer files a petition within 90 days, the Tax Court gains complete control over the disputed tax.  The IRS is barred from issuing additional deficiency notices, I.R.C. §6212(c)(1), or assessing and collecting the deficiency, §6213(a), until the Tax Court proceedings end.

The Tax Court's final decision is binding as to the tax year at issue.  *Commissioner v. Sunnen*, 333 U.S. 591, 598 (1948).  Once the Tax Court enters its decision, the IRS regains the administrative power to enforce any deficiency upheld, and it is required to assess and collect the amount determined by the Tax Court.  I.R.C. §6215(a).  The IRS may then immediately pursue collection even while the taxpayer appeals the decision, unless she posts a bond.  I.R.C. §§7481, 7485(a)(1); *McCoy*, 484 U.S. at 5.

But "[i]f the taxpayer does not file a petition with the Tax Court within the time prescribed in subsection (a)," §6213(c) commands that the IRS "shall" assess the deficiency.  Assessment is the formal recording of a taxpayer's tax liability on the tax rolls, after which the

IRS may move forward with collection. *Laing,* 423 U.S. at 170, n.13 (citing I.R.C. §6203). This unequivocal command does not contemplate introducing the uncertainty tolling brings.

Rather, it governs when the Commissioner can legally assess tax (§6213(c)), and a plethora of other deadlines that govern collection of tax also depend on the expectation that §6213(a)'s deadline is firm. *See* I.R.C. §6303(a) (within 60 days after assessment, IRS "shall … give notice" to the taxpayer and demand payment); §6213(c) (after notice and demand, the amount "shall be paid"); §6321 (lien arises); I.R.C. §6331(a) (levy authority). Moreover, the statute of limitations for collection runs from the date of assessment. *See* I.R.C. §6502. Thus, if an assessment's validity can be called into question, the clear lines governing the window in which the Commissioner's assessment and collection start to fall apart, as do the lines regarding when taxpayers can assert further collection challenges.

In short, the statutory scheme governing the administrative process of determining, assessing, and collecting tax operates like a Jenga tower of pieces stacked on one another. Disrupting the certainty that the 90-day deadline to file a Tax Court petition is a firm,

jurisdictional limit causes the tower to crumble. It is far from clear what happens to the powers and obligations (and limitations thereon) that flow from the time of assessment if the Tax Court could belatedly accept jurisdiction over a late-filed petition challenging a deficiency after it has already been properly assessed in a manner the Tax Code does not contemplate.

By making the 90-day deadline the outer limit of the Tax Court's deficiency jurisdiction, Congress carefully balanced two opposing interests: (i) the government's compelling need for "the prompt and certain" collection of taxes from all taxpayers, *United States v. Rodgers*, 461 U.S. 677, 683 (1983), and (ii) a taxpayer's stake in resolving her tax dispute before paying. This delicate balance would be upended if the Tax Court could exercise deficiency jurisdiction based on an untimely petition, and after the IRS has properly assessed a tax under §6213(c).

> **(ii) That Congress made the Tax Court's power to enjoin assessment and collection dependent on a timely petition indicates the petition-filing deadline is jurisdictional**

Section 6213(a)'s third sentence authorizes the Tax Court to enjoin assessment or collection of the deficiency at issue. But the fourth

sentence specifies that "[t]he Tax Court shall have no jurisdiction to enjoin any action or proceeding … unless a *timely* petition for a redetermination of the deficiency has been filed[.]"  As the Ninth Circuit has opined, "[b]y also specifying that the Tax Court lacks 'jurisdiction' to issue such an injunction 'unless' a petition has been filed (and then only if the petition is 'timely'), §6213(a) seems clearly to reflect an understanding that the manner in which the Tax Court *acquires* jurisdiction over a deficiency dispute is through the filing of a 'timely petition.'"  *Organic Cannabis,* 962 F.3d at 1094 (citing *Tilden,* 846 F.3d at 886); *Hallmark,* 159 T.C. at 141-42.

In *Boechler,* the Supreme Court commented that a similar injunction provision in §6330(e)(1) arguably "strengthen[ed] the Commissioner's argument" that the related Tax Court filing deadline in Section 6330(d)(1) was jurisdictional.  596 U.S. at 207-08.  The Court was ultimately unpersuaded in part because the jurisdictional language in §6330(d)(1) was separated from the filing deadline at issue via a parenthetical.  *Id.* at 204-05.  But here, as explained *supra* (pp. 32-34), §6213(a)'s filing deadline is intertwined with the jurisdictional grant.  The first sentence of §6213(a) is the only possible source of the Tax

Court's deficiency jurisdiction, *see* pp. 35-38, *supra,* and as a textual matter, the deadline that opens that sentence is not as easily severed from the jurisdictional grant as in §6330(d)(1). As the fourth sentence illustrates, if an untimely petition can strip the Tax Court of its injunction jurisdiction, it follows that a *timely* petition grants or preserves that jurisdiction. *Organic Cannabis,* 962 F.3d at 1094; *Tilden,* 846 F.3d at 886.

### (iii)  Special rules allowing later filing in limited situations indicate Congress's understanding that §6213(a)'s deadline cannot be tolled

Congress added several provisions as safety valves, to give taxpayers relief from §6213(a)'s strict jurisdictional deadline. That Congress concluded such provisions were needed evidences its understanding that the deadline is a jurisdictional limitation that courts cannot extend.

Section 6213(a)'s first sentence excludes "Saturday, Sunday, or a legal holiday in the District of Columbia as the last day" of the deficiency petition period. *Accord* I.R.C. §7503. Congress first added this sort of relief in 1926, *see* 1926 Act, §274(a), 44 Stat. at 55, after the Board of Tax Appeals had dismissed, for lack of jurisdiction, a petition

filed after a Sunday deadline, finding it "not the province of the court to extend the time." *See Appeal of Satovsky*, 1 B.T.A. 22, 25 (1924). In 1942, Congress also allowed any person outside the United States 150 days to petition. *Id.* at 143 & n.15, 174.

In 1998, Congress added §6213(a)'s fifth sentence, mandating that "[a]ny petition filed with the Tax Court on or before the date specified for filing such petition by the Secretary in the notice of deficiency shall be *treated as* timely filed." I.R.C. §6213(a) (emphasis added). It simultaneously directed the IRS to state the petition deadline in the notice. *See* Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, §3463(a), 112 Stat. 685, 767 (1998) (codified at I.R.C. §6212 note).

Congress added this "treated as timely" relief for fear that taxpayers might miss the strict window for deficiency jurisdiction if the deadline stated in the notice of deficiency is wrong. The Conference Report accompanying this change illustrates that this was because Congress understood §6213(a)'s filing deadline to be jurisdictional: "If the petition is not filed within that time period, the Tax Court *does not have jurisdiction* to consider the petition." H.R. Conf. Rep. No. 105-599,

at 599 (1998) (emphasis added).  Thus, Congress legislated a solution

for taxpayers in a scenario in which equitable tolling might very well

have been available for a non-jurisdictional deadline.

Section 6213(f)(1) is another example of Congress acting to protect

taxpayers from §6213(a)'s strict deadline.  Both the Tax Court and the

Bankruptcy Court can redetermine deficiencies before full payment.

*See* 11 U.S.C. §505(a)(1).  But filing a bankruptcy petition automatically

bars "commencement" of a deficiency proceeding in Tax Court when the

relevant "tax liability" predates the bankruptcy stay.  11 U.S.C.

§362(a)(8).  Section 6213(f)(1) suspends "the running of the time

prescribed by [§6213(a)] for filing a petition in the Tax Court with

respect to any deficiency" for the period of the bankruptcy stay "and for

60 days thereafter."  I.R.C. §6213(f)(1).

Section 6213(f)(1) thus preserves the Tax Court's power to later

redetermine a deficiency if a taxpayer files for bankruptcy during the

deficiency petition window.  *See* S. Rep. No. 96-1035, at 47-48, 50

(1980); H.R. Rep. No. 96-833, at 42–43, 45 (1980).  Without this relief,

the bankruptcy stay could cause taxpayers to miss §6213(a)'s deadline

and thereby forfeit access to Tax Court. Now, Tax Court relief is foreclosed only if the bankruptcy court determines taxpayer's liability.

That Congress concluded there was a need for these provisions to address specific conditions that might merit equitable tolling strongly indicates its understanding that §6213(a) imposes a jurisdictional deadline that courts cannot toll.

### (iv)   Sections 6512(a), 7481, 7482, and 7422(e)

Provisions that insulate Tax Court decisions from collateral attack confirm Congress's understanding that §6213(a)'s deadline is a jurisdictional limitation. When the Tax Court enters a decision as to the deficiency amount, that decision (following exhaustion of the time to appeal and any timely filed appeals) then becomes "final" and binding. *See* I.R.C. §§7481, 7482; *Old Colony*, 279 U.S. at 727 (interpreting predecessors of the current I.R.C. §§7481, 7482, former §§1002-05 (former 26 U.S.C. §§1225 to 1228)). As such, the Tax Court's decision has the same res judicata effect as other judicial decisions. *See Sunnen*, 333 U.S. at 598; *see also Old Colony*, 279 U.S. at 728.

Section 6512(a) complements this res judicata effect. Section 6512(a) provides that, "if the taxpayer files a petition with the Tax

Court *within the time prescribed in section 6213(a)* … no credit or refund of [the taxes specified in this subsection] to which such petition relates, in respect of which the Secretary has determined the deficiency … and no suit by the taxpayer for the recovery of any part of the tax shall be instituted in any court," with exceptions. I.R.C. §6512(a) (emphasis added). Simply put, this subsection generally "deprive[s] the district court [o]f jurisdiction once the Tax Court has been petitioned," because "the Tax Court's jurisdiction extends to the entire subject of the correct tax for the particular year." *Hanley v. United States,* No. 94-1315, 1994 WL 723678, at *4 n.4 (1st Cir. Oct. 5, 1994) (unpublished); *see also Dalm,* 494 U.S. at 606; *Sunnen,* 333 U.S. at 591, 598; *Moir v. United States,* 149 F.2d 455, 458, 460 (1st Cir. 1945) (discussing predecessor to §6512(a)). In this way, §6512(a) addresses the difficulties that would be posed by competing refund suits by explicitly barring administrative refund claims and refund suits once a taxpayer has submitted to the Tax Court's deficiency jurisdiction.

By its terms, §6512(a) is tied to the "time prescribed in section 6213(a)"—a design meant to "deny to the taxpayer the power" to bring any later refund suit after electing the Tax Court route. *See Old*

*Colony*, 279 U.S. at 727 (citing I.R.C. §6512(a)'s predecessor, former §284(d) (former 26 U.S.C. §1065(d)). At the time §6512(a)'s predecessor was enacted, the Board was routinely dismissing untimely petitions for lack of jurisdiction. *See* Revenue Act of 1928, Pub. L. No. 70-562, §601, 45 Stat. 791, 871-72 (1928) ("1928 Act"); *see, e.g.*, *Lewis-Hall Iron Works v. Blair*, 23 F.2d 972, 974 (D.C. Cir. 1928); *Appeal of Hurst, Anthony & Watkins*, 1 B.T.A. 26, 27 (1924) (citing cases). So when enacting §6512(a)'s predecessor, Congress explained that future refund disputes would not be barred "[i]n the case of dismissal upon the ground that the petition was filed too late," H.R. Rep. No. 69-356, at 53 (1926), but that was because untimely suits were filed after the window for deficiency jurisdiction had closed.[12] Thus, §6512(a) reflects Congress's intent that a taxpayer should get only one shot at judicial review of a tax dispute, and if the taxpayer submits to the Tax Court's deficiency jurisdiction by filing a timely petition, the proceedings will foreclose the taxpayer from relitigating the dispute in other fora.

---

[12] The Board also dismissed cases for other jurisdictional defects. *See Hallmark Rsch.*, 159 T.C. at 150-51.

Likewise, §7422(e) speaks to the division of power, this time during the pendency of a refund suit in a district court or the Court of Federal Claims. If a refund suit has been filed by the taxpayer in either of those courts, but before it can be heard, the IRS issues a deficiency notice pertaining to the same tax that "is the subject matter of taxpayer's suit, the proceedings in taxpayer's suit shall be stayed during *the period of time in which the taxpayer may file a petition with the Tax Court* for a redetermination of the asserted deficiency, and for 60 days thereafter." I.R.C. §7422(e) (emphasis added). If the taxpayer files a petition in the Tax Court in response to the notice, the other court loses jurisdiction to the extent jurisdiction is acquired by the Tax Court of the subject matter of the refund suit. *Id.*

Sections 6512(a) and 7422(e) thus mark the beginning of the Tax Court's potential jurisdiction at the issuance of the notice of deficiency, and the end of that jurisdiction at expiration of §6213(a)'s filing deadline. By specifying that other courts may have jurisdiction only outside that period, those statutes acknowledge and respect the jurisdictional function of that deadline.

## (v)  Section 7459(d)

**a.**  Section 7459(d) offers one of the most cogent examples of how Congress's intent would be distorted and taxpayers harmed if §6213(a)'s filing deadline is held to be non-jurisdictional.  Under §7459(d), if there is a jurisdictional dismissal of an untimely petition, there is then no binding Tax Court decision, and the taxpayer can still have its day in court later (usually by paying and bringing a refund suit).  *Hallmark,* 159 T.C. at 145.  But if the Tax Court dismisses a petition for a non-jurisdictional reason, that dismissal constitutes a binding decision on the merits that the Commissioner's deficiency determination was correct.  I.R.C. §7459(d).  In other words, a non-jurisdictional dismissal "operate[s] as an adjudication on the merits," automatically affirms the IRS's assessment, and precludes the taxpayer from filing a refund suit for the same tax year in a district court or the Court of Federal Claims.  Tax Ct. R. 123(d); *Culp*, 75 F.4th at 202; *United States v. Josephberg,* 562, F.3d 478, 489-90 (2d Cir. 2009).

Admittedly, if §6213(a)'s deadline is non-jurisdictional and equitable tolling is available, a limited subset of taxpayers will qualify for equitable tolling and benefit from Tax Court review.  But most

taxpayers will not meet the high bar for equitable tolling. *See Lozano v. Montoya Alvarez,* 572 U.S. 1, 10 (2014). For them, a dismissal of an untimely petition will end with a negative decision on the merits that, following exhaustion of any appeals, is "final" and binding and res judicata as to the tax year. *See* I.R.C. §§7481, 7482; *Sunnen*, 333 U.S. at 598; *Girard Tr. Co.*, 301 U.S. at 542 (citing *Old Colony*, 279 U.S. at 726-27); *see also* I.R.C. §6512(a). Those taxpayers are left with no other avenue of relief. As the Ninth Circuit recognized in *Organic Cannabis,* "the perverse effect of barring the taxpayer from later challenging the amount in a refund suit … ironically yield[s] precisely the sort of harsh consequence that the Supreme Court's recent jurisdictional jurisprudence has sought to avoid." 962 F.3d at 1095 (cleaned up).[13] The severity of the unexpected harm to taxpayers clarifies that Congress intended §6213(a)'s filing deadline to be jurisdictional.

This case illustrates how holding §6213(a)'s deadline is non-jurisdictional can be adverse to taxpayers. If this Court rules for the

---

[13] Circuits holding §6213(a) non-jurisdictional have dismissed this harm as likely "seldom to occur." *Buller,* 2025 WL 2348969, at *3 (citing *Culp,* 75 F.4th at 202)). But taxpayers may file late petitions if they perceive the deadline as flexible, while being unaware of the consequences under §7459(d).

Commissioner on the last-known-address issue and for Holdings that §6213(a)'s deadline is non-jurisdictional, Holdings would be at the end of its road no matter what. Having not raised any argument that equitable tolling should apply below and having unequivocally stated it was not challenging the substance of its liability, Holdings cannot win on the merits in the Tax Court even if it prevails on the legal questions in this Court. If the deadline in §6213(a) is non-jurisdictional, §7459(d) makes clear that the dismissal would be a final adjudication on the merits with res judicata effect, such that Holdings would have no avenue to pursue further relief. But if the 90-day deadline is jurisdictional, such that the dismissal on jurisdictional grounds was held to be correct and was affirmed, Holdings might still pay the amount claimed and challenge its liability in a refund suit.[14]

Amicus is wrong to suggest (Am.Br.15) that, under §6512(a), a taxpayer who files an untimely petition, and who does not receive equitable tolling, would not be barred from filing a refund suit for the same liability. Amicus focuses on the phrase "within the time

---

[14] In such suit, however, the court would have to determine whether the waiver on the merits still binds Holdings, under collateral estoppel principles or otherwise.

prescribed in 6512(a)," to suggest the bar on refund suits only extends to tax years for which petitions were timely filed. But as explained *supra* at p. 49, Congress drafted that language at a time when the Tax Court was routinely dismissing untimely petitions for lack of jurisdiction, and the language should be viewed in light of that Congressional understanding. Moreover, amicus's reading cannot be reconciled with §7459(d), the finality provisions in §§7481 and 7482, and res judicata principles. Under §7459(d), *any* dismissal other than for the lack of jurisdiction "shall be considered as its decision that the deficiency determined by the Secretary." Such a decision, like any other Tax Court decision, becomes final upon the exhaustion of appeals or expiration of time to appeal and has res judicata effect on the merits of the deficiency. I.R.C. §§7481(a), 7482(a); *see Sunnen*, 333 U.S. at 598; *Old Colony*, 279 U.S. at 728; *Josephberg,* 562 F.3d at 489-90. There is no "untimely petition" carveout in §7459(d) for this consequence for non-jurisdictional dismissals, as amicus argues in contravention of its plain text.[15] (Br. 15-16.) Moreover, under amicus's interpretation, a taxpayer

---

[15] As we explain *infra* at pp. 56-57, to support its invention of an "untimely petition" carveout for the consequences of a non-jurisdictional

(continued…)

who filed an untimely petition, and who received a merits decision
sustaining the Commissioner's determination under §7459(d), can
nonetheless collaterally attack that merits decision under §6512(a)
simply because the petition was untimely.  That result does violence to
the finality provisions of §§7481(a) and 7482(a), as well as longstanding
judicial principles of comity and res judicata.

Correctly interpreted, §§6512(a) and 7459(d) operate
harmoniously with a jurisdictional reading of §6213(a)'s deadline.  A
taxpayer who files a timely petition, and thus properly invokes the Tax
Court's jurisdiction, is barred from a second bite at the apple by
§6512(a).  If the Tax Court dismisses that petition, §7459(d) results in a
decision on the merits with res judicata effect.  However, if the petition-
filing deadline is jurisdictional, a taxpayer who files an untimely
petition *never* invokes the Tax Court's jurisdiction and is not barred
from relitigating the deficiency.  Section 6512(a), by its terms, is simply
irrelevant to the untimely petitioner.

---

dismissal in the text of §7459(d), amicus resorts to an incomplete
discussion of that section's legislative history.

**b.** A more complete reading of §7459(d)'s history demonstrates Congress's understanding of the §6213(a) deadline as jurisdictional. When Congress enacted §7459(d)'s predecessor in 1926, the statute did not distinguish between jurisdictional and non-jurisdictional dismissals. *See* 1926 Act, §906(c), 44 Stat. at 107. Congress explained at the time that §906(c) was "primarily necessary in order that the amount of the bond [might] be fixed, in the event the taxpayer desire[d] to have the decision reviewed by the courts." H.R. Rep. No. 69-356, at 53.

Soon after, the Board of Tax Appeals refused to enter a decision specifying the deficiency as determined by the Commissioner where the taxpayer filed an untimely petition. *Appeal of United Paper Co.,* 4 B.T.A. 257, 257-58 (1926). The Board explained that a dismissal for an untimely appeal is "in effect a determination that no appeal has been taken, and there can be no jurisdiction even to dismiss the appeal in the sense in which dismissal is used in [§906(c)]." *Id.* at 257.

Congress amended §906(c) to follow *United Paper* in 1928. The amended law excused the Board from entering dismissal orders that sustain the amount of the IRS's deficiency determination when "the dismissal is for lack of jurisdiction." 1928 Act, §601, 45 Stat. at 871-72.

Section 7459(d) still makes the same distinction. Indeed, the 1926 House Report quoted by amicus (Am.Br.16) can just as well be read to mean that Congress had intended dismissals for untimely petitions to be jurisdictional all along— *i.e.,* dismissals without prejudice to a future refund suit—and the 1928 amendment was simply spurred by the need to clarify the text, as highlighted by *United Paper. See also Hallmark,* 159 T.C. at 151-53.

### 3.    History: Section 6213(a)'s history fortifies the jurisdictional reading

The final pillar of the clear-statement rule is the "relevant historical treatment" of the statutory condition. *Reed Elsevier*, 559 U.S. at 166. While such historical treatment "is not dispositive," it remains "a factor." *Reed Elsevier,* 559 U.S. at 169.

Treatment of §6213(a) over the last century endorses a jurisdictional reading of its deadline. Before 2023, every federal appellate court to reach the question, including this one, had long held that §6213(a)'s deadline is jurisdictional. *See Ferre*, 718 F.2d at 7; *Hallmark*, 159 T.C. at 155-60, 171-82 (collecting appellate cases). Between the 1924 enactment of the deadline and 1998, Congress reenacted §6213(a), making other changes to the law—such as tolling

Saturdays, Sundays, and legal holidays if the last day to petition falls on one of those days—while leaving the language prescribing the deadline essentially unchanged. *Hallmark,* 159 T.C. at 154-60. Congress did so while presumably aware that the courts had uniformly held that this deadline was jurisdictional. *Id.* at 161-62; *see Forest Grove Sch. Dist. v. T.A.,* 557 U.S. 230, 239-40 (2009). *See also* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 322 (2012) (explaining prior-construction principle of interpretation). "Further, *stare decisis* in respect to statutory interpretation has special force, for Congress remains free to alter what [the courts] have done." *John R. Sand & Gravel Co. v. United States,* 552 U.S. 130, 139 (2008) (internal quotation marks and citations omitted).

More importantly, there is recent, direct evidence—the Internal Revenue Service Restructuring and Reform Act of 1998 ("1998 Act")— showing that Congress *affirmatively adopted* the consensus jurisdictional view. As relevant here, that law did two related things: It directed the IRS, in an uncodified note to §6212(a), to state the petition deadline in deficiency notices and added §6213(a)'s fifth sentence requiring the Tax Court to treat petitions filed by the stated

deadline "as timely filed," even if the IRS stated an erroneous deadline. *See* 1998 Act, Pub. L. No. 105-206, §3463(a)-(b), 112 Stat. 685, 767 (1998).  Explaining this change, Congress said outright: "If the petition is not filed within th[e] time period" in §6213(a), "the Tax Court does not have *jurisdiction* to consider the petition."  H.R. Conf. Rep. No. 105-599, at 289 (emphasis added).  Congress' addition of that fifth sentence is true to this understanding.  Because Congress understood the petition deadline to be jurisdictional, it also understood that the Tax Court could not toll the deadline even if the taxpayer had filed late due to an IRS mistake, so a statutory fix was necessary.

### C.    Section 6213(a)'s deadline cannot be equitably tolled even if it were not jurisdictional

Because §6213(a)'s deadline is jurisdictional, it cannot be equitably tolled.  *See Wong*, 575 U.S. at 408.  But even if it were not jurisdictional, it is still mandatory and not subject to equitable tolling.

Statutory deadlines are presumptively subject to equitable tolling. *Boechler,* 596 U.S. at 209.  However, in certain cases, there is "good reason to believe that Congress did *not* want the equitable tolling doctrine to apply."  *United States v. Brockamp*, 519 U.S. 347, 350 (1997).  In *Brockamp*, for instance, the Supreme Court held that the

deadline to file administrative refund claims, I.R.C. §6511, is mandatory and cannot be tolled "for nonstatutory equitable reasons." 519 U.S. at 348.[16]  The Court reasoned that "Section 6511 sets forth its time limitations in unusually emphatic form," *id.* at 350; that the statute "reiterates its limitations several times in several different ways," *id.* at 351; that "[t]he Tax Code reemphasizes" the mandatory deadline in other statutes, *id.*; and that "[t]he nature of the underlying subject matter," federal tax collection, suggests "that Congress would likely have wanted to decide explicitly whether, or just where and when, to expand the statute's limitations periods, rather than delegate to the courts a generalized power to do so wherever a court concludes that equity so requires." *Id.* at 352-53.  These same considerations hold true for §6213(a).

Like §6511, §6213(a)'s text prescribes a clear deadline and then carves out "explicit exceptions" that "do not include 'equitable tolling.'" *Cf. Brockamp*, 519 U.S. at 351.  There are at least eight statutory exceptions to §6213(a)'s deadline:  (1) a longer 150-day deadline for

---

[16] Jurisdiction over refund suits requires a timely-filed refund claim.  *See Dalm*, 494 U.S. at 608-11.

taxpayers outside the U.S.; (2) three amendments that collectively excluded weekends and holidays from counting "as the last day"; and (3) the treatment of petitions as timely if filed by the date stated on the notice; (4) §6213(f), suspending the deadline in the event of a bankruptcy filing, (5) §7451(b)(1), tolling the deadline when "a filing location is inaccessible," (6 & 7) §§7508(a)(1) and 7508A(a)(1) granting exceptions for service members in designated combat zones and taxpayers in federally declared disaster areas, and (8) §7502(a)'s provisions that the date of mailing is often the "date of filing." "That Congress accounted for equitable factors … strongly suggests that it did not expect an adjudicator to add a broader range of equitable factors to the mix." *Arellano v. McDonough,* 598 U.S. 1, 10 (2023).

Moreover, like the deadline in *Brockamp*, §6213(a)'s deadline is "reiterate[d]" and "reemphasize[d] … in several different ways" throughout the Tax Code. 519 U.S. at 351-52. The deadline dictates the period of prohibition on assessment (I.R.C. §6213(a), second sentence) and limits the Tax Court's power to enjoin assessments to cases with a "timely" petition (*id.,* fourth sentence). It dictates when the IRS must assess a deficiency. I.R.C. §6213(c). It affects the IRS's

power to issue additional deficiency notices.  I.R.C. §6212(c)(1).  And the general bar on refund litigation over the same year in §6512(a) depends on a petition filed by the §6213(a) deadline.  *See* pp. 47-49, *supra*.

In contrast, the deadline in *Boechler* lacked these textual features and numerous exceptions, enacted over many decades with Congress' understanding that §6213(a) is jurisdictional and can only be tolled by statutory exceptions.  *See* 596 U.S. at 210; pp. 33-34, 44-47, 51-59, *supra*.  And to apply equitable tolling to §6213(a)'s deadline would require adding a judicially made exception to Congress's detailed, express scheme of exceptions and carveouts, which the Supreme Court cautioned against.  *See Brockamp*, 519 U.S. at 351-54. "[t]ax law … is not normally characterized by case-specific exceptions reflecting individualized equities").

Unlike the relatively new collections-due-process deadline at issue in *Boechler,* the deadline for challenging a deficiency determination is a "central provision of tax law." *Boechler*, 596 U.S. at 210 (distinguishing *Brockamp*).  The deadline directly affects tax collections from every taxpayer who receives a notice of deficiency—which, in 2023, exceeded one million.  Internal Revenue Service, *2024 Data Book* at 56 (table 24

and notes 5-6, 9-10), https://www.irs.gov/pub/irs-pdf/p55b.pdf (last

visited Sept. 22, 2025). While only some of these taxpayers ultimately

file petitions challenging deficiency determinations, the "serious

administrative problems" that equitable tolling would cause are

manifest. *Brockamp*, 519 U.S. at 352. *See* pp. 40-44, 47-55, *supra*.[17]

Moreover, if the Tax Court can indefinitely retain deficiency

jurisdiction even after the injunction on assessment and collection is

lifted and even after the tax may have been assessed, collected, and

paid—that means the Tax Court also indefinitely retains its related

refund jurisdiction. *See* I.R.C. §§6213(a), 6512(b). Thus, if tolling is

allowed, then even after tax has been paid after the notice of deficiency

was mailed (voluntarily or through involuntarily collection) and the

time to seek a refund has expired, the taxpayer could seek to challenge

his liability under §6213(a), assert tolling, and seek a refund of what he

already paid. In short, the taxpayer arguably could make an end-run

around *Brockamp*'s holding of no tolling for refund claims.

---

[17] Over 19,000 deficiency petitions were filed in 2024. *See* United States Tax Court, *Congressional Budget Justification Fiscal Year 2026* at 23 (table 16), https://ustaxcourt.gov/files/documents/FY_2026_Congressional_Budget_Justification.pdf (last visited Sept. 22, 2025).

But Congress has primarily vested jurisdiction to award refunds of assessed and collected taxes in the district courts and Court of Federal Claims, subject to rigorous preconditions, including strict time limits. *See* 28 U.S.C. §1346(a); *United States v. Clintwood Elkhorn Min. Co.,* 553 U.S. 1, 8 (2008). And the Supreme Court has been clear that the time governing refund claims and suits are strict, clearly drawing to a close when a taxpayer can recover from the public fisc. *See id.*; *Brockamp*, 519 U.S. 347 (deadline for filing an administrative refund claim in I.R.C. §6511 could not be equitably tolled); *Dalm,* 494 U.S. 595 (time limit for filing refund suit is firm jurisdictional limit). This firm endpoint to taxpayers' refund claims reflects the need for a point of final certainty regarding taxes that are the "lifeblood of government" and "an imperious need." *Bull v. United States*, 295 U.S. 247, 249 (1935). But to hold that §6213(a)'s deadline can be tolled—thus opening the door to a Tax Court proceeding (and exercise of that court's accompanying refund jurisdiction) after it is too late otherwise to claim a refund— creates an end-run around otherwise strict statutory time limits on seeking refunds. That the Supreme Court has repeatedly decline to expand the time for administrative refund claims and refund suits

strongly suggests it meant to close the door on uncertainty of the amount to be retained by the fisc when the time for a refund suit expires, in order to facilitate orderly tax administration. *See, e.g., John R. Sand & Gravel Co.,* 552 U.S. at 133 (citing *Brockamp*, 519 U.S. at 352-53, and *Dalm*, 494 U.S. at 609-10).

## CONCLUSION

The Tax Court's order of dismissal should be affirmed.

Respectfully submitted,

/s/ Sherra Wong

ELLEN PAGE DELSOLE          (202) 514-8128
  *Court of Appeals Bar. No. 71201*
SHERRA WONG          (202) 616-1882
  *Court of Appeals Bar No. 1174978*
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

OCTOBER 6, 2025

# CERTIFICATE OF COMPLIANCE

## Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1.  This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

    [X]   this document contains 12,910 words, **or**

    [ ]   this brief uses a monospaced typeface and contains _____ lines of text.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [X]   this document has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in Century Schoolbook 14, **or**

    [ ]   this brief has been prepared in a monospaced typeface using _____ with _____.

(s)    /s/ Sherra Wong
Attorney for the Commissioner of Internal Revenue, appellee
Dated:  October 6, 2025

# ADDENDUM

# TABLE OF CONTENTS

**Document**                                                    **Page**

Kyick Objection to Motion to Dismiss for Lack      Aplee. Add. 1
of Jurisdiction (excerpt) (Doc. 10)

Hearing Transcript (excerpt) (Doc. 27)                 Aplee. Add. 5

# UNITED STATES TAX COURT

KYICK HOLDINGS, LLC, TRANSFEREE )
                                         )
           Petitioner               )
                                           )      Docket No. 11594-23
           v.                               )
                                           )      Filed Electronically
COMMISSIONER OF INTERNAL        )
REVENUE,                              )
                                           )
           Respondent            )

## OBJECTION TO MOTION TO DISMISS FOR LACK OF JURISDICTION

Petitioner, Kyick Holdings, LLC ("Holdings"), hereby opposes the Respondent's motion to dismiss Holdings' asserting that the Petition was filed untimely.

## Introduction

Respondent has moved to dismiss the Petition filed by Holdings for lack of jurisdiction.  Respondent asserts that the Notice of Transferee Liability (the "Holdings Notice") was sent to the Holdings' last known address by certified mail on August 30, 2022.  Holdings filed the Petition in this case on January 20, 2023, which was 143 days after the mailing of the Notice.  Respondent claims that the Petition was filed untimely; and thus, this Court lacks jurisdiction.  Respondent, however, fails to recognize the relief requested in the Petition and that the granting of such relief is clearly within the Court's jurisdiction.

Aplee. Add. 1

Respondent's motion is predicated on the notion that Holdings is challenging the substantive assessment by the IRS regarding transferee liability. However, Holdings' Petition seeks, in essence, a declaratory judgment that the IRS assessment is invalid because it failed to send the assessment notice to Holdings at its last known address. This Court clearly has jurisdiction to make that determination.[1] *See, e.g., CC & F W. Operations Ltd. P'ship v. Comm'r,* 273 F.3d 402, 407 (1st Cir. 2001)(affirming Tax Court's determination that the IRS's assessment was timely). *See also Drew v. U.S.,* 169 Ct. Cl. 69 (1965) ); *Estate of Marix v. C. I.R.,* 15 T.C. 819 (1950).

Given the above and for the reasons set forth below, the Respondent's Motion to Dismiss must be denied.

## Background

Holdings in this case is one of two alleged transferees of taxpayer Dwight Raymond in connection with a singular transaction. The other transferee is Kyick Charters, LLC ("Charters").[2] Both Holdings and Charters are owned by the children of Dwight Raymond. Both companies are located and operated in the same location ***and share the very same mailing address***.

Charters received its Notice of Transferee Liability ("Charters Notice") from the Respondent by certified mail, which notice of Transferee Liability was also

---

[1] Even if the Petition were challenging the substance of the assessment, the Court would have jurisdiction over the Petition. *See Culp v. Commissioner of Internal Revenue,* 75 F.4th 196 (2023).

[2] Charters filed a petition contesting its transferee liability related to this same transaction. See Docket No. 25548-22.

2

Holdings requests an order of this Court that the transferee liability assessment against it be abated and dismissed. *Tavano v. Commissioner,* 93-1 USTC 50, 205, 986 F.2d 1389 (11th Cir. 1993).

<u>Conclusion</u>

Based upon the foregoing facts and authority, Revenue Officer Gaines, on behalf of the Respondent, undertook a deliberate and detailed investigation and evaluation of Holdings and Charters in connection with developing his conclusion that both parties were transferees of taxpayer Dwight Raymond (see Exhibits E and F).  Although Holdings (and Charters) deny any transferee liability, evidence of Revenue Officer Gaines's diligence in collecting information, including address information for Holdings, Charters and Kylie Raymond, subsequently deployed in assessing transferee liability against Charters and <u>ignored</u> with respect to asserting transferee liability against Holdings confirms that Respondent failed to exercise reasonable diligence in determining the address to use in asserting transferee liability against Holdings both prior to the date of mailing (August 30, 2022) and thereafter, but prior to November 28, 2022.

**Aplee. Add. 3**

Based upon the foregoing, Respondent's Motion to Dismiss this case must be denied.

Dated:       September 26, 2023

_____
John W. Geismar, Attorney for Petitioner
Tax Court Bar No. GJ0951
Norman, Hanson & DeTroy LLC
2 Canal Plaza, PO Box 4600
Portland, Maine 04112-4600
jgeismar@nhdlaw.com

Dated:       September 26, 2023

_____
Daniel L. Cummings, Attorney for Petitioner
Tax Court Bar No. CD0617
Norman, Hanson & DeTroy LLC
2 Canal Plaza, PO Box 4600
Portland, Maine 04112-4600
dcummings@nhdlaw.com

#7906231

14

**Aplee. Add. 4**

1              IN THE UNITED STATES TAX COURT

2    _____

                                          )
3    In the Matter of:                    )
                                          )
4    KYICK HOLDINGS, LLC, TRANSFEREE,     ) Docket No. 11594-23
                                          )
5                   Petitioner,           )
                                          )
6    v.                                   )
                                          )
7    COMMISSIONER OF INTERNAL REVENUE,    )
                                          )
8                   Respondent.           )

9

10                   United States Tax Court
                     400 Second Street, NW
                     South Courtroom, 3rd Floor
11                   Washington, DC 20217
                     (Remote Proceeding)
12
                     October 7, 2024
13

14        The above-entitled matter came on for hearing,

15   pursuant to notice at 10:13 a.m.

16

         BEFORE:   HONORABLE CHRISTIAN N. WEILER
17                        Judge

18        APPEARANCES:

19        For the Petitioner:
          JOHN W. GEISMAR, ESQ.
20        NORMAN HANSON & DETROY, LLC
          Two Canal Plaza
21        Portland, ME 04112-4600

22        For the Respondent:
          PHILIP M. SCHREIBER, ESQ.
23        INTERNAL REVENUE SERVICE
          OFFICE OF CHIEF COUNSEL
24        Thomas P. O'Neill Jr. Federal Building
          10 Causeway Street, Room 401
25        Boston, MA 02222

**Aplee. Add. 5**

1  that was changed.

2       MR. GEISMAR:  They are different, and that's in

3  the Revenue officer's record, which is part of the

4  Stipulation.  I can't tell you how that address came to be

5  in terms of was it a telephone call or was it a written

6  request to the tax assessor of Kennebunk?  I can't tell

7  you that.

8       THE COURT:  Okay.  What's this PO Box 2663?

9  That seems to be a different PO box.  That's Mr. and Mrs.

10  Raymond's PO box, or is that a typo in the -- what exhibit

11  is this?  This is the asset purchase and sale agreement

12  between the parties that we've been sort of talking --

13  because that's a different PO box, right?  Then you were

14  saying, it's your client's position that the Revenue

15  officer should have used PO box -- help me here.  What PO

16  Box?  Oh, 2664, right?  What is PO Box 2663?

17       MR. GEISMAR:  So that's to Kylie Raymond and

18  Nick Raymond, they're brother and sister.  They own Kyick

19  Holdings, and they own Kyick Charters.

20       THE COURT:  Okay.  They're siblings.  Is that a

21  typo or is that a different --

22       MR. GEISMAR:  No.  I think that must be a typo.

23  That appears to be an asset agreement.

24       THE COURT:  Okay.  Well, what's the purpose of

25  this document?  Because it doesn't have a PO Box 2664.  It